UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOSEPH CONNORS AND JOSE LUNA RUBIO,       Case No:  20-cv-5046
individually and on behalf of all others similarly situated,

                        Plaintiffs,           **CLASS AND**
                                        **COLLECTIVE ACTION**
                                        **COMPLAINT**

                -against-            **JURY TRIAL DEMANDED**

AMERICAN MEDICAL RESPONSE, INC., AND
SENIORCARE EMERGENCY MEDICAL SERVICES, INC.

                    Defendants.
------------------------------------------------------------------------X

     Plaintiffs JOSEPH CONNORS AND JOSE LUNA RUBIO, individually and on behalf of all others similarly situated, as representatives, by their attorneys Moser Law Firm, P.C. allege, upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

**PRELIMINARY STATEMENT**

     1.  Plaintiffs Joseph Connors ("Connors") and Jose Luna Rubio ("Rubio") bring this action individually and on behalf of all others similarly situated (collectively "Plaintiffs") against American Medical Response, Inc. ("AMR") and SeniorCare Emergency Medical Services, Inc. ("SeniorCare")(AMR and SeniorCare collectively "Defendants") for the following: (1) failure to pay overtime in violation of New York Labor Law ("NYLL"); (2) failure to pay overtime in violation of the Fair Labor Standards Act ("FLSA"); (3) violation of frequency of pay provisions of NYLL § 191; and (4) failure to provide notices as required by NYLL § 195 (1).

1

## JURISDICTION AND VENUE

2.   This Court has jurisdiction over this action pursuant to, *inter alia*, 29 U.S.C. § 201 et. seq., and 28 U.S.C. § 1367.

3.   Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) as Defendant SeniorCare resides in the Southern District and pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the instant claims occurred in the Southern District.

## THE PARTIES

### Plaintiffs

4.   Plaintiff Connors is an individual who resides in the State of New York, County of Kings.

5.   Plaintiff Rubio is an individual who resides in the State of Connecticut, New Haven County.

### Defendants

6.   Defendant AMR is a foreign corporation incorporated in Delaware and licensed to do business in New York.

7.   Defendant SeniorCare is a domestic corporation incorporated in New York with a principal place of business in Bronx, New York.

8.   Defendant AMR, *inter alia*, provides medical transportation.

9.   Defendant SeniorCare provides ambulance services and has over 1,000 employees.

10. During the period of the Plaintiffs' (and other similarly situated individuals) below-described deployments AMR subcontracted SeniorCare.

2

11. Defendants are private for-profit entities that contract with government agencies, including the Federal Emergency Management Agency ("FEMA") to provide ambulance services.

12. Defendants are covered employers within the meaning of, *inter alia*, the NYLL, FLSA, and all applicable laws/statutes.

13. Plaintiffs (and other similarly situated individuals) are covered employees within the meaning of, *inter alia*, the NYLL, FSLA, and all applicable laws/statutes.

## **STATEMENT OF FACTS**

14. Plaintiff Connors began working for SeniorCare in October 2019 as an EMT and remains employed by SeniorCare.

15. Plaintiff Rubio began working for SeniorCare in May 2019 as a paramedic and remains employed by SeniorCare.

16. Plaintiff Connors' regular rate of pay is approximately $15.50 per hour.

17. Plaintiff Rubio's regular rate of pay is approximately $25 per hour.

18. At all times during their employment with SeniorCare, Plaintiffs (and other similarly situated individuals) were/are manual workers who spent/spend more than 25% of their time engaged in physical labor.

19. Plaintiffs' (and other similarly situated individuals') duties include, but are not limited to, driving, responding to calls for emergency medical assistance (such as cardiopulmonary resuscitation (CPR) or bandaging a wound), assessing a patient's condition and determining a course of treatment, providing first-aid treatment or life support care to sick or injured patients, transporting patients safely in an ambulance, transferring patients to the emergency department of a hospital or other healthcare facility, reporting their observations and

3

treatment to physicians, nurses, or other healthcare facility staff, documenting medical care given to patients, and taking inventory, replacing, and cleaning supplies and equipment after use.

20. Plaintiffs (and other similarly situated individuals) performed these duties in, among other places, the Bronx, Brooklyn, Manhattan, Queens, Westchester and Long Island.

21. Notwithstanding their status as manual workers, Plaintiffs (and other similarly situated individuals) have been paid on a bi-weekly basis, rather than weekly, from January 2020 to Present in violation of NYLL § 191.

22. Plaintiffs (and other similarly situated individuals) were not furnished with the notices required by NYLL § 195 (1).

### Deployment

23. Due to the devastating effects of the COVID-19 virus on New York, Plaintiffs (and similarly situated individuals) were deployed to perform work under a contract between FEMA and AMR.

24. Plaintiff Connors was deployed from April 16, 2020 to May 28, 2020.

25. Plaintiff Rubio was deployed from April 1, 2020 to May 28, 2020.

26. During the entirety of his deployment, Plaintiff Connors was paid his regular rate of pay of $15.50 per hour and was not paid his overtime rate for hours worked in excess of 40 hours per week.

27. During the entirety of his deployment, Plaintiff Rubio was not paid overtime notwithstanding his entitlement to same.

28. Neither Plaintiff Connors nor Plaintiff Rubio was paid a single dollar in overtime for the entirety of their deployments even though they worked significant overtime every single week of their deployment.

4

29. Other similarly situated individuals were not paid overtime.

30. For portions of their deployment Plaintiffs (and other similarly situated individuals) were given a meal stipend of $25 per day.

31. The meal stipend was not included in the Plaintiffs' (and other similarly situated individuals') regular rate for the purposes of computing the applicable overtime rate.

32. During their deployments Plaintiffs (and other similarly situated individuals) were regularly scheduled to be in the field on daily ambulance tours 12 hours per day, 7 days a week.

33. The regularly scheduled daily ambulance tours of Plaintiffs (and other similarly situated individuals) routinely lasted more than 12 hours per day.

34. Plaintiffs (and other similarly situated individuals) were required to remain "on call" at all times when not in the field, including by responding to any call or message immediately.

35. Plaintiffs (and other similarly situated individuals) were in fact called and required to report to work during their "on call" hours.

36. When Plaintiffs (and other similarly situated individuals) were not in the field they were housed in and required to remain in hotels.  If they did not remain in their hotels, Plaintiffs (and other similarly situated individuals) faced removal from deployment, suspension and/or termination.

37. Defendants treated all hours while deployed (whether in the field or on call) as hours worked.

38. Defendants considered all hours while deployed (whether in the field or on call) as hours worked.

5

39. Plaintiffs (and other similarly situated individuals) were paid their regular rate for every hour of every day during the entirety of their deployment.

40. At all times during their deployment, Plaintiffs (and other similarly situated individuals) were/are manual workers who spent/spend more than 25% of their time engaged in physical labor.

41. During their deployment, Plaintiffs' (and other similarly situated individuals) duties included, but were not limited to, driving, responding to calls for emergency medical assistance (such as cardiopulmonary resuscitation (CPR) or bandaging a wound), assessing a patient's condition and determining a course of treatment, providing first-aid treatment or life support care to sick or injured patients, transporting patients safely in an ambulance, transferring patients to the emergency department of a hospital or other healthcare facility, reporting their observations and treatment to physicians, nurses, or other healthcare facility staff, documenting medical care given to patients, and taking inventory, replacing, and cleaning supplies and equipment after use.

42. Plaintiffs (and other similarly situated individuals) performed these duties, among other places, the Bronx, Queens, and East and Far Rockaway.

43. Notwithstanding their status as manual workers, Plaintiffs (and other similarly situated individuals) were paid on a bi-weekly basis, rather than weekly, during the entirety of their deployment in violation of NYLL § 191.

44. During their deployment, Plaintiffs (and other similarly situated individuals), in addition to being employees of SeniorCare, were employees of AMR.

45. In particular, but not by way of limitation, Plaintiff(s) (and other similarly situated individuals) were issued phones by AMR, were required to update AMR on their statuses via the

6

phone, were directed by a task force leader who was an AMR employee, were issued AMR credentials, and received briefings from AMR employees.  AMR also had the power to initiate sending people home.

46. All of the Defendants' unlawful and violative actions with respect to the Plaintiffs and members of the classes set forth below were in bad faith and willful within the meaning of the pertinent laws and statutes including, but not limited to, the NYLL and the FLSA.

## CLASS ACTION ALLEGATIONS

47. All of SeniorCare's EMTs and Paramedics in the State of New York performed/perform the same duties as Plaintiffs.

48.  All of SeniorCare's EMTs and Paramedics in the State of New York performed/perform duties similar to those performed by Plaintiffs.

49. All of SeniorCare's EMTs and Paramedics in the State of New York spent/spend most of their time engaged in physical labor.

50. All of SeniorCare's EMTs and Paramedics in the State of New York spent/spend at least 25% of their time engaged in physical labor.

51.  All of SeniorCare's EMTs and Paramedics in the State of New York were/are manual workers.

52.  All of SeniorCare's EMTs and Paramedics in the State of New York were/are paid on a bi-weekly basis.

53. All of SeniorCare's employees in the State of New York did not receive a wage notice within 10 days of hiring as required by NYLL § 195 (1) and NYLL § 198 (1-b).

54. Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and the following classes:

7

(a) All EMTs and Paramedics who were/are employed by SeniorCare in the State of New York at any time from six years prior to the filing of this complaint to the present who were paid bi-weekly instead of weekly (the "SeniorCare Frequency Class"); and

(b) All individuals who were/are employed by SeniorCare in the State of New York at any time from six years prior to the filing of this complaint to the present who did not receive notices pursuant to NYLL § 195 (1)  (the "SeniorCare Notice Class")(SeniorCare Frequency Class and SeniorCare Notice Class collectively "SeniorCare Classes").

55. There is diversity of citizenship between at least one class member of the SeniorCare Classes and the Defendants.

56. The amount in controversy considering all members of the SeniorCare Classes is in excess of $5,000,000.

57. The members of the SeniorCare Classes are so numerous that joinder of all members is impracticable.  SeniorCare has in excess of 1,000 employees.  The precise number of members of the SeniorCare Classes is known to the Defendants.

58. Common questions of law and fact exist as to the SeniorCare Classes that predominate over any questions only affecting members of the SeniorCare Classes individually, namely: (1) whether the EMTS and paramedics are "manual worker" positions; (2) whether the individuals employed by SeniorCare received a wage notice under NYLL § 195 (1); (3) whether the EMTS and paramedics were paid on a bi-weekly basis; and (4) the damages to which members of the SeniorCare Classes are entitled due to SeniorCare's failure to comply with NYLL § 191, NYLL § 195 (1), and/or NYLL § 198 (1-b).

59. The Plaintiffs' claims are typical of the claims of the SeniorCare Classes they seek to represent.  Plaintiffs and all of the members of the SeniorCare Classes work, or have worked, in the State of New York for SeniorCare.  Plaintiffs and all of the members of the SeniorCare Frequency Class have performed similar job duties and have spent more than 25% of

7074733.1

their time engaged in physical labor.  Plaintiffs and the SeniorCare Frequency Class have been paid bi-weekly rather than weekly.  Plaintiffs and all members of the SeniorCare Notice Class are entitled to notices under NYLL § 195 (1).  The Plaintiffs and the members of the SeniorCare Classes all enjoy the same statutory rights under NYLL § 191, NYLL § 195 (1) and NYLL § 198 (1-b).

60. Plaintiffs will fairly and adequately represent and protect the interests of the members of the SeniorCare Classes.  Plaintiffs understand that as class representatives, they assume a fiduciary responsibility to the SeniorCare Classes to represent their interests fairly and adequately.  Plaintiffs recognize that as class representatives, they must represent and consider the interests of the SeniorCare Classes just as they would represent and consider their own interests.  Plaintiffs understand that in decisions regarding the litigation and its possible settlement, they must not favor their own interests over the SeniorCare Classes.  Plaintiffs recognize that any resolution of a class action must be in the best interest of the SeniorCare Classes.  Plaintiffs understand that in order to provide adequate representation, they must be informed of developments in litigation, cooperate with class counsel, and testify at depositions and/or trial.

61. Plaintiffs have retained counsel competent and experienced in complex class actions and employment litigation.

62. There is no conflict between Plaintiffs and the members of the SeniorCare Classes.

63. A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the SeniorCare Classes have been damaged and are entitled to recovery as a result of SeniorCare's violations of NYLL § 191, NYLL § 195 (1)

9

and NYLL § 198 (1-b).  Although the relative damages suffered by the individual members of the classes are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  The individual members of the SeniorCare Classes lack the financial resources to vigorously prosecute individual lawsuits against SeniorCare to recover damages.  In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about SeniorCare's practices.

64. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) as the questions of law and fact common to the members of the SeniorCare Classes predominate over any other questions affecting only individual members, and as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

65. This action is properly maintainable as a class action under Federal Rules of Civil Procedure 23(b)(1)(A) and 23(b)(1)(B) in that prosecuting separate actions by individual members of the SeniorCare Classes would create a risk of adjudications with respect to the individual members of the SeniorCare Classes that may establish incompatible standards of conduct for the parties opposing the SeniorCare Classes and/or that, as a practical matter, would be dispositive of the interests of the other members of the SeniorCare Classes not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

**Deployment Classes**

66. All SeniorCare EMTs and Paramedics deployed to perform work under the contract between FEMA and AMR in the State of New York performed the same duties as Plaintiffs.

10

67.  All SeniorCare EMTs and Paramedics deployed to perform work under the contract between FEMA and AMR in the State of New York performed duties similar to those performed by Plaintiffs.

68. All SeniorCare EMTs and Paramedics deployed to perform work under the contract between FEMA and AMR in the State of New York spent most of their time engaged in physical labor.

69. All SeniorCare EMTs and Paramedics deployed to perform work under the contract between FEMA and AMR in the State of New York spent at least 25% of their time engaged in physical labor.

70.  All SeniorCare EMTs and Paramedics deployed to perform work under the contract between FEMA and AMR in the State of New York were manual workers.

71. All SeniorCare EMTs and Paramedics deployed to perform work under the contract between FEMA and AMR in the State of New York were paid on a bi-weekly basis.

72. All SeniorCare EMTs and Paramedics deployed to perform work under the contract between FEMA and AMR in the State of New York were entitled to overtime, and did not receive overtime.

73. Upon information and belief, all EMTs and Paramedics performing work under the contract between FEMA and AMR who were housed at the Holiday Inn received a daily meal stipend of $25.

74. Upon information and belief, the meal stipend paid to all EMTs and Paramedics performing work under the contract between FEMA and AMR who were housed at the Holiday Inn was not included in the regular rate of pay for the purposes of computing overtime.

7074733.1

75. Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and the following classes:

(a) All SeniorCare EMTs and Paramedics performing work under the contract between FEMA and AMR who were/are deployed by Defendants in New York during the Covid-19 pandemic who were paid bi-weekly instead of weekly (the "Deployment Frequency Class");

(b) All SeniorCare EMTs and Paramedics performing work under the contract between FEMA and AMR who were/are deployed by Defendants in New York during the Covid-19 pandemic who were not paid overtime (the "Deployment Overtime Class"); and

(c) All EMTs and Paramedics performing work under the contract between FEMA and AMR who were/are housed by AMR at the Holiday Inn during the Covid-19 pandemic who received a daily $25 meal stipend (the "Meal Stipend Class") (the Deployment Frequency Class, Deployment Overtime Class, and Meal Stipend Class are collectively referred to herein as the "Deployment Classes").

76. There is diversity of citizenship between at least one class member of the Deployment Classes and the Defendants.

77. The amount in controversy considering all members of the Deployment Classes is in excess of $5,000,000.

78. The members of the Deployment Classes are so numerous that joinder of all members is impracticable. SeniorCare has in excess of 1,000 employees. The precise number of members of the Deployment Classes is known to the Defendants.

79. Common questions of law and fact exist as to the Deployment Classes that predominate over any questions only affecting members of the Deployment Classes individually, namely: (1) whether the EMTs and paramedics are "manual worker" positions; (2) whether the EMTs and paramedics were paid on a bi-weekly basis; (3) whether the EMTs and paramedics earned/received overtime; (4) whether the members of the Meal Stipend Class received a stipend of $25 each day (5) whether AMR and SeniorCare were required to include the amount of the

7074733.1

stipend in the regular rate of pay and (6) the damages to which members of the Deployment Classes are entitled.

80. The Plaintiffs' claims are typical of the claims of the Deployment Classes they seek to represent.  Plaintiffs and all of the members of the Deployment Classes work, or have worked, in the State of New York.  Plaintiffs and all of the members of the Deployment Frequency Class have performed similar job duties and have spent more than 25% of their time engaged in physical labor.  Plaintiffs and members of the Deployment Frequency Class were paid bi-weekly instead of weekly.  Plaintiffs and all members of the Deployment Overtime Class earned and are entitled to overtime.  Plaintiffs and the members of the Meal Stipend Class all received a $25 meal stipend each day, and such amount was not included in their regular rate of pay.  Plaintiffs and the members of the Deployment Classes all enjoy the same rights.

81. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Deployment Classes.  Plaintiffs understand that as class representatives, they assume a fiduciary responsibility to the Deployment Classes to represent their interests fairly and adequately.  Plaintiffs recognize that as class representatives, they must represent and consider the interests of the Deployment Classes just as they would represent and consider their own interests.  Plaintiffs understand that in decisions regarding the litigation and its possible settlement, they must not favor their own interests over the Deployment Classes.  Plaintiffs recognize that any resolution of a class action must be in the best interest of the Deployment Classes.  Plaintiffs understand that in order to provide adequate representation, they must be informed of developments in litigation, cooperate with class counsel, and testify at depositions and/or trial.

7074733.1

82. Plaintiffs have retained counsel competent and experienced in complex class actions and employment litigation.

83. There is no conflict between Plaintiffs and the members of the Deployment Classes.

84. A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the Deployment Classes have been damaged and are entitled to recovery as a result of Defendants' violations of, inter alia, New York's overtime laws, NYLL § 191, NYLL § 195 (1), NYLL § 195 (3), NYLL § 198 (1-b), and NYLL § 198 (1-d).  Although the relative damages suffered by the individual members of the classes are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation.  The individual members of the Deployment Classes lack the financial resources to vigorously prosecute individual lawsuits against Defendants to recover damages.  In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

85. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) as the questions of law and fact common to the members of the Deployment Classes predominate over any other questions affecting only individual members, and as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

86. This action is properly maintainable as a class action under Federal Rules of Civil Procedure 23(b)(1)(A) and 23(b)(1)(B) in that prosecuting separate actions by individual members of the Deployment Classes would create a risk of adjudications with respect to the individual members of the Deployment Classes that may establish incompatible standards of

14

conduct for the parties opposing the Deployment Classes and/or that, as a practical matter, would be dispositive of the interests of the other members of the Deployment Classes not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

## COLLECTIVE ACTION ALLEGATIONS

87. Plaintiffs bring this action individually and on behalf of all others similarly situated pursuant to, inter alia, 29 U.S.C. § 216(b).  Plaintiffs and the similarly situated individuals worked as EMTs and Paramedics for Defendants.  The proposed collective(s) are defined as follows:

> (a) All EMTs and Paramedics employed by SeniorCare and contracted out to AMR who were/are deployed by Defendants in New York during the Covid-19 pandemic who were not paid overtime (the "FLSA Overtime Collective"); and

> (b) All EMTs and Paramedics performing work under the contract between FEMA and AMR who were/are housed by AMR at the Holiday Inn during the Covid-19 pandemic (the "Meal Stipend Collective")(the FLSA Overtime Collective and Meal Stipend Collective are collectively referred to herein as the "FLSA Collectives").

88. Plaintiffs have consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b) and their consent forms are attached hereto as Exhibit A.  As this case proceeds, it is likely that additional individuals will file consent forms and join as "opt-in" plaintiffs.

89. Plaintiffs and the FLSA Collectives are or were employed by Defendants within the meaning of the FLSA.

90. Plaintiffs and the FLSA Collectives worked substantial overtime hours for each week of their deployment for which they were not compensated.

7074733.1

91. Defendants required overtime work.  Defendants are aware that Plaintiffs and the FLSA Collectives worked overtime and despite that knowledge denied Plaintiffs and the FLSA Collectives overtime compensation.

92. Defendants' unlawful conduct is widespread, repetitious, and consistent affecting the Plaintiffs and the FLSA Collectives.

93. Defendants' conduct is willful and in bad faith and has caused significant damages to the Plaintiffs and the FLSA Collectives.

94. Defendants are and were aware of the FLSA's requirements.

95. Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the FLSA Collectives.

96. Notice of this action should be sent to the FLSA Collectives.  There are numerous similarly situated current and former employees of Defendants who have been denied appropriate compensation in violation of the FLSA, who would benefit from a Court supervised notice of the lawsuit and the opportunity to join the case.  Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

97. Each of the Defendants are covered by the FLSA as, inter alia, each Defendant does in excess of $500,000 per year in sales and engages in interstate commerce.

**FIRST CAUSE OF ACTION**
**Plaintiff Connors, Plaintiff Rubio and the SeniorCare Frequency Class against SeniorCare**
**Violations of NYLL §§ 191 and 198**

98. Plaintiffs repeat and reallege paragraphs 1 through 97 hereof, as if fully set forth herein.

99. Plaintiffs and the SeniorCare Frequency Class were/are employed by SeniorCare.

16

100.     Plaintiffs and the SeniorCare Frequency Class spent/spend most of their time engaged in physical labor.

101.     Plaintiffs and the members of the SeniorCare Frequency Class spent/spend at least 25% of their time engaged in physical labor.

102.     Plaintiffs and the members of the SeniorCare Frequency Class were/are manual workers as defined by the NYLL.

103.     Plaintiffs and the members of the SeniorCare Frequency Class were/are entitled to be paid on a weekly basis and no later than seven days after the workweek in which the wages were/are earned.

104.     SeniorCare willfully failed to pay the Plaintiffs and the members of the SeniorCare Frequency Class as frequently as required by NYLL § 191.

105.     SeniorCare willfully failed to pay wages to the Plaintiffs and the members of the SeniorCare Frequency Class within seven days after the end of each workweek in which wages were earned as required by NYLL § 191.

106.     Due to SeniorCare's violations of the NYLL, Plaintiffs and the members of the SeniorCare Frequency Class are entitled to recover from SeniorCare liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

107.     Due to SeniorCare's violations of the NYLL, Plaintiffs and the members of the SeniorCare Frequency Class have been damaged in an amount to be determined a trial.

### SECOND CAUSE OF ACTION
### Plaintiff Connors, Plaintiff Rubio and the SeniorCare Notice Class against SeniorCare
### Violations of NYLL §§ 195 (1) and 198 (1-b)

108.     Plaintiffs repeat and reallege paragraphs 1 through 107 hereof, as if fully set forth herein.

7074733.1

109.       Pursuant to Section 195(1) of the NYLL, an employer must furnish an employee with a notice listing, inter alia, the rate of pay, including overtime pay, whether the pay is hourly, daily, or weekly, the regular day on which pay is dispersed, the name of the employer and its contact information, and any allowances taken.

110.       This notice must be provided in English and in the language identified by each employee as the primary language of such employee, at the time of hiring and must be maintained by the employer for six (6) years.

111.       Prior to February 27, 2015, an employee not furnished with a compliant wage notice within 10 days of hiring was entitled to damages of fifty dollars for each workweek that the violations occurred or continue to occur.

112.       On and after February 27, 2015, an employee not furnished with a compliant wage notice within 10 days of hiring is entitled to damages of fifty dollars for each workday that the violations occurred or continue to occur.

113.       At all relevant times SeniorCare failed to comply with NYLL § 195 (1) by, inter alia, failing to provide Plaintiffs and the members of the SeniorCare Notice Class with the required wage notices and/or failing to give Plaintiffs and the members of the SeniorCare Notice Class copies of the notices for their records.

114.       Due to SeniorCare's violations of the NYLL, Plaintiffs and the members of the SeniorCare Notice Class are entitled to recover from SeniorCare the statutory damages provided by NYLL § 198 (1-b).

7074733.1

**THIRD CAUSE OF ACTION**
**Plaintiff Connors, Plaintiff Rubio and the Deployment Overtime Class against Defendants**
**Failure to pay overtime in violation of NYLL**

115.     Plaintiffs repeat and reallege paragraphs 1 through 114 hereof, as if fully set forth herein.

116.     Plaintiffs and the Deployment Overtime Class were employees of Defendants within the definition of the NYLL.

117.     Defendants were employers of Plaintiffs and the Deployment Overtime Class within the definition of the NYLL.

118.     Pursuant to NYLL, Plaintiffs and the Deployment Overtime Class were to be paid time and a half their regular rate for all hours worked per week in excess of 40.

119.     Each week during their deployment, Plaintiffs and the Deployment Overtime Class worked substantial overtime and were not compensated for same.

120.     Defendants were aware of the overtime worked by Plaintiffs and the Deployment Overtime Class and Defendants failure to compensate Plaintiffs and the Deployment Overtime Class for their overtime worked was in bad faith and willful within the meaning of all pertinent laws and statutes including the NYLL.

121.     As a result of the foregoing, Plaintiffs and the Deployment Overtime Class are entitled to damages in an amount to be determined at trial which includes, but is not limited to, the unpaid overtime wages, liquidated damages, interest, and attorneys' fees, costs and disbursements.

7074733.1

## FOURTH CAUSE OF ACTION
**Plaintiff Connors, Plaintiff Rubio and the Meal Stipend Class against Defendants**
**Failure to pay overtime in violation of NYLL**

122.     Plaintiffs repeat and reallege paragraphs 1 through 121 hereof, as if fully set forth herein.

123.     Plaintiffs and the Meal Stipend Class were employees of Defendants within the definition of the NYLL.

124.     Defendants were employers of Plaintiffs and the Meal Stipend Class within the definition of the NYLL.

125.     Pursuant to NYLL, Plaintiffs and the Meal Stipend Class were to be paid time and a half their regular rate for all hours worked per week in excess of 40.

126.     Upon information and belief, for purposes of computing overtime, the Defendants did not include the meal stipend in the regular rate of pay.

127.     Upon information and belief, each week during their deployment, Plaintiffs and the Meal Stipend Class worked substantial overtime.

128.     Upon information and belief, the Plaintiffs and the Meal Stipend Class were not compensated at one and one half their actual regular rate of pay for all hours worked per week in excess of 40.

129.     The failure to compensate Plaintiffs and the Meal Stipend Class for their overtime worked at the appropriate overtime rate was in bad faith and willful within the meaning of all pertinent laws and statutes including the NYLL.

130.     As a result of the foregoing, Plaintiffs and the Meal Stipend Class are entitled to damages in an amount to be determined at trial which includes, but is not limited to,

7074733.1

the unpaid overtime wages, liquidated damages, interest, and attorneys' fees, costs and disbursements.

**FIFTH CAUSE OF ACTION**
**Plaintiff Connors, Plaintiff Rubio and the FLSA Overtime Collective against Defendants**
**Failure to pay overtime in violation of FLSA**

131.     Plaintiffs repeat and reallege paragraphs 1 through 130 hereof, as if fully set forth herein.

132.     The FLSA requires covered employers to pay non-exempt employees no less than one-and-one-half times their regular rate of pay for all hours worked in excess of 40 in a workweek.

133.     Plaintiffs and the FLSA Overtime Collective were employees of Defendants within the definition of the FLSA.

134.     Defendants were employers of Plaintiffs and the FLSA Overtime Collective within the definition of the FLSA.

135.     Each week during their deployment, Plaintiffs and the FLSA Overtime Collective worked substantial overtime and were not compensated for same.

136.     Defendants were aware of the overtime worked by Plaintiffs and the FLSA Overtime Collective and Defendants failure to compensate Plaintiffs and the FLSA Overtime Collective for their overtime worked was in bad faith and willful within the meaning of all pertinent laws and statutes including the FLSA.

137.     As a result of the foregoing, Plaintiffs and the FLSA Overtime Collective are entitled to damages in an amount to be determined at trial which includes, but is not limited to, the unpaid overtime wages, liquidated damages, interest, and attorneys' fees, costs and disbursements.

**SIXTH CAUSE OF ACTION**
**Plaintiff Connors, Plaintiff Rubio and the Meal Stipend Collective against Defendants**
**Failure to pay overtime in violation of FLSA**

138.     Plaintiffs repeat and reallege paragraphs 1 through 137 hereof, as if fully set forth herein.

139.     The FLSA requires covered employers to pay non-exempt employees no less than one-and-one-half times their regular rate of pay for all hours worked in excess of 40 in a workweek.

140.     With limited exceptions not applicable here, the regular rate must include all forms of non-overtime compensation paid to employees.

141.     Plaintiffs and the Meal Stipend Collective were employees of Defendants within the definition of the FLSA.

142.     Defendants were employers of Plaintiffs and the Meal Stipend Collective within the definition of the FLSA.

143.     Each week during their deployment, Plaintiffs and the Meal Stipend Collective worked substantial overtime.

144.     Upon information and belief, for purposes of computing overtime, the Defendants did not include the meal stipend in the regular rate of pay.

145.     Upon information and belief, each week during their deployment, Plaintiffs and the Meal Stipend Class were not compensated at one and one half their actual regular rate of pay for all hours worked per week in excess of 40.

146.     Defendants were aware of the overtime worked by Plaintiffs and the Meal Stipend Collective and Defendants failure to compensate Plaintiffs and the Meal Stipend

22

Collective for their overtime worked was in bad faith and willful within the meaning of all pertinent laws and statutes including the FLSA.

147.    As a result of the foregoing, Plaintiffs and the Meal Stipend Collective are entitled to damages in an amount to be determined at trial which includes, but is not limited to, the unpaid overtime wages, liquidated damages, interest, and attorneys' fees, costs and disbursements.

## SEVENTH CAUSE OF ACTION
### Plaintiff Connors, Plaintiff Rubio and the Deployment Frequency Class against Defendants Violations of NYLL §§ 191 and 198

148.    Plaintiffs repeat and reallege paragraphs 1 through 147 hereof, as if fully set forth herein.

149.    Plaintiffs and the Deployment Frequency Class were/are employed by Defendants.

150.    Plaintiffs and the Deployment Frequency Class spent/spend most of their time engaged in physical labor.

151.    Plaintiffs and the members of the Deployment Frequency Class spent/spend at least 25% of their time engaged in physical labor.

152.    Plaintiffs and the members of the Deployment Frequency Class were/are manual workers as defined by the NYLL.

153.    Plaintiffs and the members of the Deployment Frequency Class were/are entitled to be paid on a weekly basis and no later than seven days after the workweek in which the wages were/are earned.

154.    Defendants willfully failed to pay the Plaintiffs and the members of the Deployment Frequency Class as frequently as required by NYLL § 191.

7074733.1

155.     Defendants willfully failed to pay wages to the Plaintiffs and the members of the Deployment Frequency Class within seven days after the end of each workweek in which wages were earned as required by NYLL § 191.

156.     Due to Defendants' violations of the NYLL, Plaintiffs and the members of the Deployment Frequency Class are entitled to recover from Defendants liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

157.     Due to Defendants' violations of the NYLL, Plaintiffs and the members of the Deployment Frequency Class have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situated persons, respectfully request that the Court grant the following relief:

a)   Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b)   Certification of this case as a collective action;

c)   Designation of Plaintiffs as representatives of the classes and counsel of record as class counsel;

d)   On the first cause of action, liquidated damages, reasonable attorneys' fees, costs and disbursements, and pre-judgment and post-judgment interest in an amount to be determined at trial;

e)   On the second cause of action, statutory damages provided by NYLL § 198 (1-b);

f)   On the third cause of action, damages in an amount to be determined at trial which includes, but is not limited to, unpaid overtime wages, liquidated damages, interest, and attorneys' fees, costs and disbursements;

7074733.1

g)  On the fourth cause of action, damages in an amount to be determined at trial which includes, but is not limited to, unpaid overtime wages, liquidated damages, interest, and attorneys' fees, costs and disbursements;

h)  On the fifth cause of action, damages in an amount to be determined at trial which includes, but is not limited to, unpaid overtime wages, liquidated damages, interest, and attorneys' fees, costs and disbursements;

i)  On the sixth cause of action, damages in an amount to be determined at trial which includes, but is not limited to, unpaid overtime wages, liquidated damages, interest, and attorneys' fees, costs and disbursements;

j)  On the seventh cause of action, liquidated damages, reasonable attorneys' fees, costs, and disbursements and pre-judgment and post-judgment interest in an amount to be determined at trial;

k)  Liquidated damages permitted pursuant to NYLL/FLSA;

l)  Statutory damages permitted pursuant to NYLL;

m)  Prejudgment interest;

n)  Post-Judgment interest;

o)  Reasonable attorneys' fees and costs of the action;

p)  A reasonable service award to compensate Plaintiffs for the time they have spent and will spend attempting to recover damages for the members of the classes and for the risks they take in doing so;

q)  Appropriate injunctive and declaratory relief; and

r)  Such other relief as this Court shall deem just and proper.

7074733.1

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims properly triable by a jury.

Dated: Huntington, New York
       July 1, 2020

Respectfully Submitted,

MOSER LAW FIRM, P.C.

By: ___Paul Pagano_____

Steven J. Moser, Esq.
Paul A. Pagano, Esq.
*Attorneys for Plaintiffs*
5 East Main Street
Huntington, NY 11743
(516) 671-1150
(631) 759-9766
steven.moser@moserlawfirm.com
paul.pagano@moserlawfirm.com

26

7074733.1

EXHIBIT A

## **CONSENT TO JOIN COLLECTIVE ACTION**

I am/was employed by Defendants in the position of _EMT_____.

Pursuant to Section 16(b) of the Fair Labor Standards Act, I hereby consent to be a party plaintiff in a collective action brought in the United States District Court for the Southern District of New York entitled *Connors et. al. v. American Medical Response, Inc. et. al.*, to recover unpaid overtime wages and other sums owing to me and to other, similarly-situated employees under the FLSA and other applicable federal and state laws.  I hereby authorize Moser Law Firm, P.C. to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

06/30/2020
_____
Date

_____
Signature

Joseph Connors
_____
Print Name

26

7074733.1

## CONSENT TO JOIN COLLECTIVE ACTION

I am/was employed by Defendants in the position of <u>Paramedic</u> .

Pursuant to Section 16(b) of the Fair Labor Standards Act, I hereby consent to be a party plaintiff in a collective action brought in the United States District Court for the Southern District of New York entitled *Connors et. al. v. American Medical Response, Inc. et. al.*, to recover unpaid overtime wages and other sums owing to me and to other, similarly-situated employees under the FLSA and other applicable federal and state laws.  I hereby authorize Moser Law Firm, P.C. to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

06/30/2020
Date

Signature

Jose C. Luna Rubio
Print Name

26

7074733.1