**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

JOSEPH CONNORS and JOSE LUNA RUBIO,
individually and on behalf of all others similarly
situated,

               Plaintiffs,

               v.                             Case No.: 20-cv-5046

AMERICAN MEDICAL RESPONSE, INC. and
SENIORCARE EMERGENCY MEDICAL
SERVICES, INC.,

               Defendants.

----------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

**Paul A. Pagano**
**Moser Law Firm, P.C.**
**5 East Main Street**
**Huntington, New York**
**(516) 671-1150**
**paul.pagano@moserlawfirm.com**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... ii

Preliminary Statement ......................................................................................... 1

Background Facts ................................................................................................. 2

I.    The Parties. ..................................................................................................... 2

II.   The Alleged Claims In The Lawsuit. ............................................................. 2

III.   Procedural History. ...................................................................................... 3

Summary of the Settlement Terms ...................................................................... 4

Class Action Settlement Procedure ..................................................................... 9

Argument ............................................................................................................. 11

I.    Standard for approval of a preliminary class action settlement motion. ....... 11

II.   The settlement is fair, reasonable, and adequate. ......................................... 12

III. The proposed notice is appropriate. .............................................................. 15

IV.   The notice plan and award distribution process are appropriate. ................. 16

Conclusion ........................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). ....................................................12

*Damassia v. Duane Reade, Inc.*, 2009 U.S. Dist. LEXIS 77489 (S.D.N.Y. 2009) ........................7

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005)...........................................11, 15

*Grochowski v. Phoenix Const.*, 318 F.3d 80 (2d Cir. 2003).........................................................13

*In re Austrian*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000)...............................................................14, 15

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993)..............................16

*In re Traffic Executive Ass'n*, 627 F.2d 631 (2d Cir. 1980) .......................................................11

*In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516 (3d Cir. 2004) .........................................13

*Joel A. v. Giuliani,* 218 F.3d 132 (2d Cir. 2000))........................................................................15

*Mayes v. Excelsior Ambulance Serv.*, 2019 U.S. Dist. LEXIS 44427 (D.S.C. March 19, 2019)..13

*Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1998)...............................11

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005).......................................11

## STATUTES

NYLL § 191 ................................................................................................................... Passim

NYLL § 195 ................................................................................................................... Passim

## RULES

Fed. R. Civ. P. 23 .......................................................................................................... Passim

**<u>Preliminary Statement</u>**

Plaintiffs' complaint in the instant action set forth seven causes of action as follows: (1) violation of NYLL § 191(1)(a); (2) violation of NYLL § 195(1); (3) failure to pay overtime in violation of the NYLL; (4) failure to pay overtime in violation of NYLL (failing to include meal stipend in calculation of regular rate for overtime purposes); (5) failure to pay overtime in violation of the FLSA; (6) failure to pay overtime in violation of FLSA (failing to include meal stipend in calculation of regular rate for overtime purposes); and (7) violation of NYLL § 191(1)(a) during the period beginning March 29, 2020 through May 30, 2020 when SeniorCare Emergency Medical Services, Inc.'s ("SeniorCare") EMTs and Paramedics were deployed in New York to assist with the COVID pandemic ("New York COVID deployment").   After Defendants' answers (in which they denied all wrongdoing), the exchange of vital documents, a full day mediation session with Robert H. Kheel, Esq. and continued good faith discussions between the parties, the parties were able to reach a settlement.   More particularly, subject to Court approval, the Parties have agreed to settle Joseph Connors' ("Connors") and Jose Luna Rubio's ("Rubio" and with Connors "Named Plaintiffs") and the Class/Collective Members' claims for One Hundred Sixty Thousand Dollars and Zero Cents ($160,000.00).   The proposed settlement would resolve all of the Named Plaintiffs' claims as well as the Class/Collective members' Wage Claims as defined in the concurrently submitted settlement agreement.   As established below, the proposed settlement satisfies all criteria for preliminary approval.

As such, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Class Settlement Agreement and Release ("Settlement Agreement") attached as Exhibit 2 to the Declaration of Paul A. Pagano, Esq. in Support of Plaintiffs' instant motion ("Pagano Dec."); (2) preliminarily certify the following settlement class for purposes of effectuating the

settlement: "All individuals who performed work as Emergency Medical Technicians or Paramedics in connection with a deployment in New York in response to the COVID-19 pandemic during the period beginning March 29, 2020 and continuing through May 30, 2020;" (3) approve the proposed class action notice ("Proposed Class Notice"), attached as Exhibit 3 to the Pagano Dec, and direct its distribution; (4) set the date for the fairness hearing; (5) approve the proposed class action settlement procedure; (6) designate the undersigned's firm as class counsel; and (7) approve the proposed schedule for final settlement approval set forth in this memorandum and in the Proposed Order (attached as Exhibit 4 to the Pagano Dec). Defendants do not oppose this motion.

## **Background Facts**

### I.      **The Parties.**

Plaintiff Connors was employed by Defendant SeniorCare as an EMT from October 2019 until July 15, 2020.  Plaintiff Rubio has been employed by SeniorCare since June 2019.  SeniorCare assigned its employees, including the Named Plaintiffs, to the New York COVID deployment pursuant to a contract with Defendant American Medical Response, Inc. ("AMR").

### II.      **The Alleged Claims In The Lawsuit.**

Plaintiffs' Complaint ("the Complaint") asserts the following claims: (1) SeniorCare violated the NYLL because it paid the Named Plaintiffs and the "SeniorCare Frequency Class" in violation of NYLL § 191(1)(a) (Count I); (2) SeniorCare violated the NYLL because it did not provide the Named Plaintiffs and the "SeniorCare Notice Class" with the hiring notices required by NYLL § 195(1) (Count II); (3) Defendants failed to properly compensate the Named Plaintiffs and the "Deployment Overtime Class" for overtime in violation of the NYLL (Count III); (4) Defendants failed to include meal stipends in the regular rate used to calculate overtime

premiums for the Named Plaintiffs and "Meal Stipend Class" in violation of the NYLL (Count IV); (5) Defendants failed to properly compensate the Named Plaintiffs and "FLSA Overtime Collective" for overtime in violation of the FLSA (Count V); (6) Defendants failed to include meal stipends in the regular rate used to calculate overtime premiums for the Named Plaintiffs and "Meal Stipend Collective" in violation of the FLSA (Count VI); and (7) Defendants violated the NYLL because they did not pay the Named Plaintiffs and members of the "Deployment Frequency Class" in accordance with NYLL § 191(1)(a) (Count VII).

## III.   Procedural History.

Plaintiffs filed their Complaint on July 1, 2020.  Defendants answered on September 14, 2020.  The Court referred the case to Mediation on October 2, 2020.  On December 15, 2020, the parties held a mediation session with Robert Kheel, Esq.  On February 1, 2021, the parties reached an agreement in principle to settle the litigation.

## Summary of the Settlement Terms

### I.    The settlement fund.

The parties have agreed that Defendants will pay $160,000.00 to settle the instant litigation with said sum to be placed in a Qualified Settlement Fund ("Settlement Fund"). $125,000 of the $160,000 will be paid to resolve the Wage Claims as defined in the Settlement Agreement. The balance, $35,000, shall be paid to the Named Plaintiffs to resolve their individual claims including their Frequency Claims as defined in the Settlement Agreement. *This is not a claims made settlement but rather a common fund settlement.* The "Net Settlement Fund" as defined in the Settlement Agreement will be paid out to Authorized Claimants who submit a timely Claim Form and Release and the Named Plaintiffs, who are deemed Authorized Claimants under the terms of the Settlement Agreement. The Defendants are responsible for paying the regular employer portion of the employee payroll taxes in addition to the Fund.

### II.    Releasees and claims released.

**A.**    By operation of the entry of the Final Approval Order, except as to such rights or claims as may be created by the Settlement Agreement, each individual Class Member who does not file an Opt-out Statement as set forth in the Settlement Agreement will forever and fully release American Medical Response, Inc., SeniorCare Emergency Medical Services, Inc., and all presently or formerly affiliated persons or entities including, but not limited to, any of AMR's or SeniorCare's present or former parent corporations, their owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers, reinsures, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and/or administrators, and all persons acting by, through, under or in concert with any of them ("Releasees"), from all wage and hour claims that could have been asserted under federal or state laws by and on behalf of the Class Members in the Lawsuit regarding the New York COVID deployment as defined in the Settlement Agreement. The Released Claims will include all claims under federal or New York State laws for minimum or overtime wages, unreimbursed expenses, spread of hours, any related wage and hour claims, all claims under NYLL for penalties, all related derivative benefit claims (both ERISA and non-ERISA benefits). Specifically, the Released Claims will include any and all claims related to hours worked on the New York COVID deployment under the NYLL, Article 6, §192 (Cash payment of wages); §193 (Deductions from wages); §195 (Notice and record-keeping requirements); §198-c (Benefits or wage supplements); §198-d (Posting regulations on illegal wage deductions) and any claim under

4

Article 19, § 605 et seq. of the NYLL for a claim of minimum wage or overtime and other provisions including the supporting state regulations and New York Minimum Wage Orders, 12 NYCRR §§ 146, et seq., provided however, Class Members are not waiving claims for alleged violation of NYLL §§ 191 and 198 with respect to frequency of pay.  For those Class Members who file claims, the Released Claims will further include any and all claims under the FLSA, 29 U.S.C.S. §§ 201 et seq. for minimum wage, overtime, unreimbursed expenses, and supporting federal regulations, interest on such claims, and attorneys' fees and costs related to such claims through the date the Settlement Agreement was executed by all Parties.

        **B.**      In addition for the consideration set forth in the Settlement Agreement, the Named Plaintiffs and their executors, administrators, successors and assigns, will voluntarily release and forever discharge Releasees of and from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity, which they may have against Releasees as of the date of execution of the Settlement Agreement, whether known or unknown, asserted or unasserted, including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1991, Pub. L. No. 102-166, Sections 1981 through 1988 of Title 42 of the United States Code, 42 U.S.C. §§ 1981-1988; the Age Discrimination in Employment Act; the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq.; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; the Immigration Reform and Control Act, as amended; the Workers Adjustment Retraining Notification Act, as amended; the Family and Medical Leave Act; the New York City Administrative Code; the New York State Human Rights Law, New York Executive Law § 290 et seq.; the New York Civil Rights Law, New York Civil Rights Law § 1 et seq.; Article 6 of the New York Labor Law, New York Labor Law § 190 et seq.; the New York occupational safety and health laws; any claim arising under the common law; any other claim for employment discrimination, retaliation, wrongful termination, constructive discharge, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress; any claim for costs, fees, or other expenses, including attorneys' fees or any other action against Releasees, based upon any conduct occurring up to and including the date Named Plaintiffs executed the Settlement Agreement.

## III.    **Eligible Employees**.

       The eligible employees are the Named Plaintiffs and Opt-In Plaintiffs as defined in the

Settlement Agreement,

## IV.    **Allocation Formula**.

       An Authorized Claimant's Individual Gross Amount from the Net Settlement Fund will

be determined by the Settlement Claims Administrator as follows: The individual settlement

allocation to Authorized Claimants shall be based on a formula that computes a percentage of the

Net Settlement Fund for each Authorized Claimant.   More particularly, each Authorized Claimant's individual settlement shall be calculated by dividing their individual potential amount of recovery based on the number of hours each Authorized Claimant was assigned to the New York COVID deployment by the total potential alleged unpaid wage pool. Assuming full participation, once the percentage is computed, the Authorized Claimants will then be apportioned the same percentage of the Net Settlement Fund. For example, if an individual percentage of the potential unpaid wages pool is equal to 5%, then that Authorized Claimant would have the ability to submit a claim to receive 5% of the Net Settlement Fund.  If there is less than full participation, meaning not all eligible Class Members submit a timely Claim Form and Release, the Authorized Claimants will have their percentages rescaled such that their percentages total 100% of the Net Settlement Fund.  For example, if only three members (whose non-scaled percentages are 5%, 15% and 25%) timely submit a Claim Form and Release, making them Authorized Claimants, their respective shares of the Net Settlement Fund shall be scaled to 11.11%, 33.33% and 55.55%. Authorized Claimants whose individual apportionment would result in a payment of less than $50, will be apportioned a minimum award from the Net Settlement Amount in the amount of $50.

Named Plaintiffs claim that they (and the Class/Collective Members) were entitled to be paid for all 24 hours per day that they were assigned to the New York COVID deployment. Defendants disagree on the grounds that a portion of the time was not compensable.  The parties also dispute the rate at which the hours in dispute should have been paid.  Plaintiffs assert that all EMTs and paramedics on the deployment should have been paid a minimum of $25 per hour based on a prevailing wage schedule related to the Service Contract Act ("SCA").  Defendants

dispute Plaintiffs' right to recover SCA rates in this case.  The Fund is designed to compensate each Class/Collective Member for a portion of the allegedly unpaid or underpaid overtime.

## V.     **Attorney Fees and Litigation Costs**.

Consistent with the Settlement Agreement, Defendants agree that the Plaintiffs are entitled to an award of attorneys' fees and costs. The attorney fees and reasonable litigation costs will be deducted from the Settlement Fund. In a motion for final approval, Class Counsel will submit a request for attorney fees and costs, which the Defendants will not oppose, but will not exceed thirty-three and one-third percent (33.33%) of the Settlement Fund.

## VI.    **Service Awards**.

In recognition of the services they rendered on behalf of the class, from the Settlement Fund, $4,000.00 in services awards will be requested to be allocated to Plaintiffs Connors and Rubio ("Service Awards").

Plaintiffs Connors and Rubio will apply to the Court to receive service payments of no more than $2,000.00 each.  The Service Awards will be deducted from the Settlement Fund before it is allocated. The Class Representatives have served the class by assisting with the preparation of the Complaint, assisting counsel in preparing for mediation, producing documents and attending mediation. They have also shouldered the inherent risks of being named Plaintiffs in a class action lawsuit. Service Awards of this type are commonly awarded in complex wage and hour litigation. *See Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, No. 04 Civ. 2295, 2009 U.S. Dist. LEXIS 77489, at **10-11 (S.D.N.Y. 2009) ("Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff.").

**VII.**   <u>**Settlement Claims Administrator**</u>.

The Parties have agreed that Analytics Consulting LLC shall serve as the Settlement Claims Administrator. (Pagano Dec., Ex. 2 (Settlement Agreement) ¶ 2.3) The Claims Administrator shall be responsible for (i) preparing, printing and disseminating to Class Members the Proposed Notice; (ii) copying counsel for all Parties on material correspondence; (iii) tracking and promptly furnishing Class Counsel and Defendants' Counsel with copies of objections, Opt-out Statements, or other written or electronic communications from Class Members that the Settlement Claims Administrator receives; (iv) receiving, retaining and reviewing the Claims Forms submitted by Class Members; (v) mailing the Settlement Checks to Authorized Claimants; (vi) preparing and mailing Class Counsel's attorneys' fees, expenses, and costs, and Service Awards in accordance with the Settlement Agreement and/or any Order of the Court; (vii) administering all payroll tax obligations of Defendant SeniorCare, including issuing the W-2 and 1099 Forms for all amounts paid to the Authorized Claimants; (viii) responding to inquiries of Class Counsel and Defendants' Counsel consistent with the Settlement Claims Administrator's duties; (ix) maintaining adequate records of its activities, including the dates of the mailing/emailing of any Notice and mailing/emailing and receipt of Claim Form(s), returned mail/email and other communications and attempted written or electronic communications with Class Members; (x) providing Class Counsel and Defendants' Counsel with all information, documents, and calculations necessary to determine the Net Settlement Fund and each Authorized Claimant's pro rata share or allocation of the Net Settlement Fund; (xi) providing Class Counsel and Defendants' Counsel with updates of the number and identity of Authorized Claimants, objections, and Opt-out Statements; (xii) throughout the period of claims administration, the Settlement Claims Administrator will provide reports to the Parties upon

request by either Party, regarding the status of the mailing of the Proposed Notice to Class Members, Authorized Claimants, the claims administration process, distribution of the Settlement Checks, or any other aspect of the claims administration process, subject to the terms of this Agreement; and, (xiii) such other tasks as the Parties mutually agree.

The administration cost is being deducted from the Settlement Fund prior to distributions and will be a maximum of approximately $5,000. To select the Claims Administrator, counsel for the parties secured bids from two administration companies. The claims administrator selected submitted a competitive proposal, and has substantial experience handling such matters.

**VIII.**   **Settlement payment schedule**.

Defendants will fund the $160,000 Settlement Fund by making a single lump sum payment within 30 days after the Final Approval Order issued by the Court following the fairness hearing.

## Class Action Settlement Procedure

The well-defined class action settlement procedure includes three distinct steps:

1. Preliminary approval of the proposed Settlement Agreement after submission to the Court of the instant written motion for preliminary approval;

2. Dissemination of mailed, emailed and/or published notice of settlement to all affected Class/Collective Members; and

3. A final settlement approval hearing at which class/collective members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002). This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.

With this motion, Plaintiffs request that the Court take the first step – granting preliminary approval of the Settlement Agreement, approving Plaintiffs' Proposed Notice, and authorizing it to be sent. The parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1.      Within fifteen (15) calendar days after the Preliminary Approval Order, Defendant SeniorCare will provide the Settlement Claims Administrator, in electronic form, the following information for all Class/Collective Members: name, telephone number, social security number, last known address, and e-mail address as that information exists on file with Defendant SeniorCare.  All such information provided to the Settlement Claims Administrator will also be provided to Class Counsel, except for the Class/Collective Members' last known addresses and social security numbers. (Pagano Dec., Ex. 2  ¶2.5(A).).

2.      Within fifteen (15) days after Defendant SeniorCare provides the information set forth in Paragraph 2.5(A) to the Settlement Claims Administrator, the Settlement Claims Administrator shall mail to all Class/Collective Members, at the addresses provided by Defendant SeniorCare, via First Class United States Mail, postage prepaid, the Court-approved Proposed Notice.  The Court-approved Proposed Notice shall also be emailed to all Class/Collective Members.  (Pagano Dec., Ex. 2, ¶ 2.5(B).)

3.      Consistent with the Settlement Agreement, Class/Collective members have 45 days after the date the notices are mailed to submit claim forms, opt-out statements, or objections.

4.      The Claims Administrator will use all reasonable efforts to reach Class/Collective Members as set forth in the Settlement Agreement (*See e.g.* Pagano Dec., Ex. 2, ¶ 2.5(C))

5.      The Parties respectfully request that a final fairness hearing be scheduled as soon as is convenient for the Court on a date not less than 100 days after the filing of this preliminary approval motion.

6.      Not later than fifteen (15) days before the final fairness hearing, Plaintiffs will prepare and file a Motion for Final Approval of the Settlement.

7.      If the Court grants Plaintiffs' Motion for Final Approval of the Settlement, the Court will issue a Final Approval Order and dismiss the lawsuit consistent with the terms of the Settlement Agreement. (Pagano Dec. Ex. 2,  ¶ 2.8(B).)

8.      The Final Effective Date shall be the date: (a) thirty (30) days after the Court has entered the Final Approval Order and dismissal if there are no appeals; or (b) if appellate review is sought, after the expiration of all avenues of appellate review have been exhausted and no further review is permitted. (Pagano Dec., Ex. 2, ¶ 1.17.)

9.      The settlement checks to Authorized Claimants, payment to the Claims Administrator and payment to Class Counsel for attorneys fees and costs will be issued by the Claims Administrator within thirty (30) days after the Final Effective Date. (Pagano Dec., Ex. 2  ¶ 2.9(C))

10.     The settlement checks will remain negotiable for a period of ninety (90) days from the date of mailing. (Pagano Dec, Ex. 2  ¶ 3.2(D))

11.     By operation of the Final Approval Order, the releases set forth in ¶ 4.1 of the Settlement Agreement will come into effect (Pagano Dec., Exhibit 2,  ¶ 4.1.)

**Argument**

**I.      Standard for approval of a preliminary class action settlement motion.**

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). The trial court has the discretion to approve a proposed class action settlement. *Maywalt v. Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1079 (2d Cir. 1998). To grant preliminary approval of a class action settlement the court need only initially review the written submissions of the parties in support of the motion and determine if the settlement is fair and would most likely be approved at a full-scale hearing after submission to the settlement class. *In re Traffic Executive Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members). Fairness is determined by reviewing the negotiations of the settlement agreement and its terms. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). But, "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotations omitted).

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463(2d Cir. 1974). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," *id.* at §11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

## II.     The settlement is fair, reasonable, and adequate.

### 1.   *Grinnell factor one is satisfied given the complexity, expense and likely duration of the litigation*.

This matter is still in the preliminary phases of litigation and proving and defending the issues will be complex.  The parties dispute, among other things, whether certain time that EMTs and Paramedics were assigned to the New York COVID deployment was compensable and the rate at which such time should be compensated.  Plaintiffs claim that they, and all Class/Collective Members, should have been compensated for all hours that they were assigned to the New York COVID deployment at Service Contract Act ("SCA") rates.

Defendants contend that there is no private right of action available under the SCA and that the SCA preempts state law claims for underpayment of wages. *Mayes v. Excelsior Ambulance Serv.*, Civil Action No.: 3:17-cv-02358-JMC, 2019 U.S. Dist. LEXIS 44427 (D.S.C. March 19, 2019); *Grochowski v. Phoenix Const.*, 318 F.3d 80 (2d Cir. 2003). Extensive and costly discovery and motion practice would be necessary to resolve these issues. Additionally, given the factual issues inherent in this litigation a trial would likely be necessary and as a result the matter would likely not resolve for quite some time.

### 2. Grinnell factor two is satisfied because the putative class is most likely not expecting a settlement.

Although notice of the settlement and its details has not yet been issued to Class/Collective members, the Named Plaintiffs believe that the reaction would be positive as, *inter alia*, the $125,000 earmarked for the Class/Collective Members' wage claims represents approximately 100% of their alleged unpaid overtime when calculating same based on their regular (as opposed to SCA) rates of pay. Moreover, it is unlikely that Class/Collective Members are expecting to receive additional pay for the New York COVID deployment.

And, although the Court could more fully analyze this factor after notice is issued and Class/Collective Members are given the opportunity to opt-out or object, it weighs in favor of preliminary approval.

### 3. Grinnell factor three is satisfied because the Parties engaged in sufficient discovery.

Although preparing this case through trial would require hundreds more hours of work for both sides, the parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 537 (3d Cir. 2004).

The parties' discovery here meets this standard. Class Counsel interviewed the Named Plaintiffs and reviewed their documents.  Also, the parties exchanged discovery and briefing in advance of mediation.  Further, the parties also exchanged confidential information at a private mediation session to learn the strengths and weaknesses of their cases.

**4. Grinnell factors four and five are satisfied because the risks of establishing liability and damages pose a significant enough risk to the Plaintiffs to merit settlement.**

Although Plaintiffs believe their case is strong, it is subject to considerable risk as to liability and damages. In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian*, 80 F. Supp. 2d 164, 177 (SDNY 2000)(internal quotations omitted).

The initial risk in this matter is securing conditional and class certification.  Among other things, the small number of potential class members creates a risk that Plaintiffs will fail to satisfy the numerosity requirement.  Also, as discussed above, there is a legal question as to whether there is a private right of action available under the SCA and whether the SCA preempts state law claims for underpayment of wages.  Moreover, there is a question as to the number of compensable hours worked by Plaintiffs that effect both liability and damages.

Thus, this factor weighs heavily in favor of preliminary approval.

**5. Grinnell factor six is satisfied because the risks of maintaining the class action through the trial.**

This factor is satisfied because there is currently no class or collective group certified. Settlement eliminates this risk, expense, and delay. This factor favors preliminary approval.

**6. Grinnell factor seven is satisfied because the defendants are not likely to withstand a greater judgment when viewed in light of a potential judgment.**

Defendants' ability to withstand a greater judgment is not currently at issue. Even if Defendants can withstand a greater judgment, a "defendant's ability to withstand a greater

14

judgment, standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D.
at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). This factor does not hinder this
Court from granting preliminary approval.

> **7.   *Grinnell* factors eight and nine are satisfied because the settlement fund is reasonable in light of the best possible recovery and in light of all the attendant risks of litigation.**

Plaintiffs' counsel has determined that this case presents risks that militate toward
compromise.  Defendants have agreed to settle this case with Class/Collective Members for
$125,000.00 and to settle the separate individual claims of the Named Plaintiffs for $35,000.00.
The $125,000 represents almost full payment for the Class/Collective Members' alleged unpaid
overtime based on their regular (as opposed to SCA) rates.  The $35,000 represents a substantial
portion of the Named Plaintiffs' non-overtime based claims.  The foregoing amounts represent
good value given the attendant risks of litigation, even though recovery could be greater if
Plaintiffs succeeded on all claims at trial and survived an appeal.

*          *          *

The *Grinnell* factors all weigh in favor of issuing preliminary approval of the settlement.
If a substantial number of objectors come forward with meritorious objections, then the Court
may reevaluate its determination. Because the settlement, on its face, is "'fair, adequate, and
reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v.
Giuliani,* 218 F.3d 132, 138-39(2d Cir. 2000)), the Court should grant its preliminary approval.

## III. The proposed notice is appropriate.

The content of the Proposed Class Notice, attached to the Pagano Dec as Exhibit 3, fully
complies with due process and Fed. R. Civ. P. 23. Pursuant to Fed. R. Civ. P. 23(c)(2)(B), the
notice must provide:

the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

The Proposed Class Notice satisfies each of these requirements. It also describes the terms of the settlement and provides specific information regarding the date, time, and place of the final approval hearing. Accordingly, the detailed information in the Proposed Class Notice is more than adequate to put class members on notice of the proposed settlement and is well within the requirements of Rule 23(c)(2)(B).  Notably, Courts have approved class notices even when, unlike here, they provided only general information about a settlement. *See, e.g., In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60(S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"). The Proposed Class Notice far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B). Plaintiffs respectfully request that the Court approve the Proposed Class Notice.

**IV.     The notice plan and award distribution process are appropriate.**

The Settlement Agreement provides that notices to Class/Collective Members will be mailed individually by the Claims Administrator to the last known address of each class member and also sent by email. (Pagano Dec., Exhibit 2, ¶ 2.5(B)).  Defendants will forward the class list to the Claims Administrator within fifteen (15) calendar days after the issuance of the Preliminary Approval Order. (*Id.* at ¶ 2.5(A).) The Claims Administrator will send notices within fifteen (15) calendar days after the contact information has been provided. (*Id.* at ¶2.5(B).) The Settlement Administrator will take all reasonable steps to obtain the correct

address of any class member for whom a Proposed Notice is returned as undeliverable and re-send to the most recent addresses available. (*Id.* at ¶ 2.5(C).)

The Proposed Notice contains information about how to exclude oneself, object to the settlement, and/or file a claim. Class Members will have 45 days from the date of mailing to submit opt-out requests or to comment on or object to the settlement. (Id. at ¶2.6(A) and 2.7(A).)) After final approval, the Claims Administrator will send to Authorized Claimants their distribution payments thirty (30) days after the Final Effective Date. (*Id.* at ¶ 2.9(C).)

## **Conclusion**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of the Settlement and enter the Proposed Order.

Dated: Huntington, New York
        April 9, 2021

Respectfully submitted,
Moser Law Firm, P.C.

*Paul Pagano*

Paul A. Pagano
5 East Main Street
Huntington, NY 11743
paul.pagano@moserlawfirm.com
Tel: (516) 671-1150

17