## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

JOSEPH CONNORS and JOSE LUNA RUBIO,
individually and on behalf of all others similarly
situated,

               Plaintiffs,

               v.

AMERICAN MEDICAL RESPONSE, INC. and
SENIORCARE EMERGENCY MEDICAL
SERVICES, INC.,

               Defendants.

Case No.: 20-CV-5046

------------------------------------------------x

## NOTICE OF PROPOSED SETTLEMENT IN ACCORDANCE WITH
## THE CLASS ACTION FAIRNESS ACT 28 U.S.C. § 1715

PURSUANT TO THE CLASS ACTION FAIRNESS ACT, 28 U.S.C. § 1715 ("CAFA"),

Defendants *AMERICAN MEDICAL RESPONSE, INC. and SENIORCARE EMERGENCY MEDICAL*

*SERVICES, INC.* ("Defendants"), hereby give notice to the Office of the Attorney General of the United

States, and the Offices of the Attorney General for the States of Connecticut, New York, Maryland and

Pennsylvania that on the 9th day of April, 2021 Plaintiffs above-named filed a motion seeking Court

approval under Rule 23(e) of the Federal Rules of Civil Procedure to move the Court for an Order

granting preliminary approval and conditional certification of a settlement class in the above-referenced

matter.

PLEASE TAKE FURTHER NOTICE, that the following documents and relevant

pleadings have been filed with the Court in the above-referenced action:

     1.     The Complaint filed by Plaintiff on July 1, 2020 attached hereto as Exhibit A.

2.      The Class Settlement Agreement and Release ("the Settlement Agreement") executed by the parties resolving Plaintiffs' putative class action claims attached hereto as Exhibit B. Within the single Settlement Agreement the parties agreed to settle a number of claims on a class basis and agreed to settle additional claims made by the Named Plaintiffs on an individual basis.

3.      The proposed Notice of Proposed Settlement of Class Action and Collective Action Lawsuit to be provided to class members regarding the members' rights to request exclusion from the class action, attached hereto as Exhibit C.

4.      No final judgment or notice of dismissal has been filed in this matter.

PURSUANT TO CAFA, 28 U.S.C. § 1715(b)(7)(B), the parties estimate that there are: 20 class members in New York; 2 in Connecticut, 1 in Maryland and 1 in Pennsylvania. The proportionate share of the claims of the class members will be determined based upon the number of hours each worked in connection with a deployment from March 29, 2020 through May 30, 2020, as set forth more fully in the Settlement Agreement.  As of the date of this Notice, the Court has not yet scheduled a judicial hearing relating to the parties' proposed settlement.

Dated: Melville, New York
       April 19, 2021

                                    Respectfully submitted,

                                    ATTORNEYS FOR DEFENDANTS,
                                    *AMERICAN MEDICAL RESPONSE, INC. and*
                                    *SENIORCARE EMERGENCY MEDICAL SERVICES,*
                                    *INC.,*

                        By:    /s/ Brendan Sweeney
                               Brendan Sweeney
                               brendan.sweeney@jacksonlewis.com
                               Jackson Lewis P.C.
                               58 South Service Road, Ste. 250
                               Melville, NY  11747
                               (631) 247-0404

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that, on April 19, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties of record by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

Attorney General Merrick B. Garland
Office of the United States Attorney General
United States Department of Justice
950 Pennsylvania Avenue N.W.
Washington, D.C.  20530-0001

Attorney General William Tong
Connecticut Office of the Attorney General
55 Elm Street
Hartford, CT 06106

Attorney General Brian Frosh
Maryland Office of the Attorney General
200 St. Paul Place
Baltimore, MD 21202

Attorney General Letitia James
New York Office of the Attorney General
Dept. of Law – The Capitol, 2nd Floor
Albany, New York  12224-0341

Attorney General Josh Shapiro
Pennsylvania Office of Attorney General
Strawberry Square, 16th Floor
Harrisburg, PA 17120

*/s/ Brendan Sweeney*
Brendan Sweeney

4844-6437-2197, v. 1

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

JOSEPH CONNORS AND JOSE LUNA RUBIO,                    Case No: 20-cv-5046
individually and on behalf of all others similarly situated,

                                    Plaintiffs,        **CLASS AND
                                                       COLLECTIVE ACTION
                                                       COMPLAINT**

                    -against-                          **JURY TRIAL DEMANDED**

AMERICAN MEDICAL RESPONSE, INC., AND
SENIORCARE EMERGENCY MEDICAL SERVICES, INC.

                                    Defendants.
------------------------------------------------------------------------X

     Plaintiffs JOSEPH CONNORS AND JOSE LUNA RUBIO, individually and on behalf of

all others similarly situated, as representatives, by their attorneys Moser Law Firm, P.C. allege,

upon personal knowledge as to themselves and upon information and belief as to other matters,

as follows:

## PRELIMINARY STATEMENT

    1. Plaintiffs Joseph Connors ("Connors") and Jose Luna Rubio ("Rubio") bring this

action individually and on behalf of all others similarly situated (collectively "Plaintiffs") against

American Medical Response, Inc. ("AMR") and SeniorCare Emergency Medical Services, Inc.

("SeniorCare")(AMR and SeniorCare collectively "Defendants") for the following: (1) failure to

pay overtime in violation of New York Labor Law ("NYLL"); (2) failure to pay overtime in

violation of the Fair Labor Standards Act ("FLSA"); (3) violation of frequency of pay provisions

of NYLL § 191; and (4) failure to provide notices as required by NYLL § 195 (1).

1

7074733.1

## JURISDICTION AND VENUE

2.  This Court has jurisdiction over this action pursuant to, *inter alia*, 29 U.S.C. § 201 et. seq., and 28 U.S.C. § 1367.

3.  Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) as Defendant SeniorCare resides in the Southern District and pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the instant claims occurred in the Southern District.

## THE PARTIES

**Plaintiffs**

4.  Plaintiff Connors is an individual who resides in the State of New York, County of Kings.

5.  Plaintiff Rubio is an individual who resides in the State of Connecticut, New Haven County.

**Defendants**

6.  Defendant AMR is a foreign corporation incorporated in Delaware and licensed to do business in New York.

7.  Defendant SeniorCare is a domestic corporation incorporated in New York with a principal place of business in Bronx, New York.

8.  Defendant AMR, *inter alia*, provides medical transportation.

9.  Defendant SeniorCare provides ambulance services and has over 1,000 employees.

10. During the period of the Plaintiffs' (and other similarly situated individuals) below-described deployments AMR subcontracted SeniorCare.

2

11. Defendants are private for-profit entities that contract with government agencies, including the Federal Emergency Management Agency ("FEMA") to provide ambulance services.

12. Defendants are covered employers within the meaning of, *inter alia*, the NYLL, FLSA, and all applicable laws/statutes.

13. Plaintiffs (and other similarly situated individuals) are covered employees within the meaning of, *inter alia*, the NYLL, FSLA, and all applicable laws/statutes.

## STATEMENT OF FACTS

14. Plaintiff Connors began working for SeniorCare in October 2019 as an EMT and remains employed by SeniorCare.

15. Plaintiff Rubio began working for SeniorCare in May 2019 as a paramedic and remains employed by SeniorCare.

16. Plaintiff Connors' regular rate of pay is approximately $15.50 per hour.

17. Plaintiff Rubio's regular rate of pay is approximately $25 per hour.

18. At all times during their employment with SeniorCare, Plaintiffs (and other similarly situated individuals) were/are manual workers who spent/spend more than 25% of their time engaged in physical labor.

19. Plaintiffs' (and other similarly situated individuals') duties include, but are not limited to, driving, responding to calls for emergency medical assistance (such as cardiopulmonary resuscitation (CPR) or bandaging a wound), assessing a patient's condition and determining a course of treatment, providing first-aid treatment or life support care to sick or injured patients, transporting patients safely in an ambulance, transferring patients to the emergency department of a hospital or other healthcare facility, reporting their observations and

3

treatment to physicians, nurses, or other healthcare facility staff, documenting medical care given to patients, and taking inventory, replacing, and cleaning supplies and equipment after use.

20. Plaintiffs (and other similarly situated individuals) performed these duties in, among other places, the Bronx, Brooklyn, Manhattan, Queens, Westchester and Long Island.

21. Notwithstanding their status as manual workers, Plaintiffs (and other similarly situated individuals) have been paid on a bi-weekly basis, rather than weekly, from January 2020 to Present in violation of NYLL § 191.

22. Plaintiffs (and other similarly situated individuals) were not furnished with the notices required by NYLL § 195 (1).

### Deployment

23. Due to the devastating effects of the COVID-19 virus on New York, Plaintiffs (and similarly situated individuals) were deployed to perform work under a contract between FEMA and AMR.

24. Plaintiff Connors was deployed from April 16, 2020 to May 28, 2020.

25. Plaintiff Rubio was deployed from April 1, 2020 to May 28, 2020.

26. During the entirety of his deployment, Plaintiff Connors was paid his regular rate of pay of $15.50 per hour and was not paid his overtime rate for hours worked in excess of 40 hours per week.

27. During the entirety of his deployment, Plaintiff Rubio was not paid overtime notwithstanding his entitlement to same.

28. Neither Plaintiff Connors nor Plaintiff Rubio was paid a single dollar in overtime for the entirety of their deployments even though they worked significant overtime every single week of their deployment.

4

29. Other similarly situated individuals were not paid overtime.

30. For portions of their deployment Plaintiffs (and other similarly situated individuals) were given a meal stipend of $25 per day.

31. The meal stipend was not included in the Plaintiffs' (and other similarly situated individuals') regular rate for the purposes of computing the applicable overtime rate.

32. During their deployments Plaintiffs (and other similarly situated individuals) were regularly scheduled to be in the field on daily ambulance tours 12 hours per day, 7 days a week.

33. The regularly scheduled daily ambulance tours of Plaintiffs (and other similarly situated individuals) routinely lasted more than 12 hours per day.

34. Plaintiffs (and other similarly situated individuals) were required to remain "on call" at all times when not in the field, including by responding to any call or message immediately.

35. Plaintiffs (and other similarly situated individuals) were in fact called and required to report to work during their "on call" hours.

36. When Plaintiffs (and other similarly situated individuals) were not in the field they were housed in and required to remain in hotels.  If they did not remain in their hotels, Plaintiffs (and other similarly situated individuals) faced removal from deployment, suspension and/or termination.

37. Defendants treated all hours while deployed (whether in the field or on call) as hours worked.

38. Defendants considered all hours while deployed (whether in the field or on call) as hours worked.

5

7074733.1

39. Plaintiffs (and other similarly situated individuals) were paid their regular rate for every hour of every day during the entirety of their deployment.

40. At all times during their deployment, Plaintiffs (and other similarly situated individuals) were/are manual workers who spent/spend more than 25% of their time engaged in physical labor.

41. During their deployment, Plaintiffs' (and other similarly situated individuals) duties included, but were not limited to, driving, responding to calls for emergency medical assistance (such as cardiopulmonary resuscitation (CPR) or bandaging a wound), assessing a patient's condition and determining a course of treatment, providing first-aid treatment or life support care to sick or injured patients, transporting patients safely in an ambulance, transferring patients to the emergency department of a hospital or other healthcare facility, reporting their observations and treatment to physicians, nurses, or other healthcare facility staff, documenting medical care given to patients, and taking inventory, replacing, and cleaning supplies and equipment after use.

42. Plaintiffs (and other similarly situated individuals) performed these duties, among other places, the Bronx, Queens, and East and Far Rockaway.

43. Notwithstanding their status as manual workers, Plaintiffs (and other similarly situated individuals) were paid on a bi-weekly basis, rather than weekly, during the entirety of their deployment in violation of NYLL § 191.

44. During their deployment, Plaintiffs (and other similarly situated individuals), in addition to being employees of SeniorCare, were employees of AMR.

45. In particular, but not by way of limitation, Plaintiff(s) (and other similarly situated individuals) were issued phones by AMR, were required to update AMR on their statuses via the

6

phone, were directed by a task force leader who was an AMR employee, were issued AMR

credentials, and received briefings from AMR employees. AMR also had the power to initiate

sending people home.

46. All of the Defendants' unlawful and violative actions with respect to the Plaintiffs

and members of the classes set forth below were in bad faith and willful within the meaning of

the pertinent laws and statutes including, but not limited to, the NYLL and the FLSA.

### CLASS ACTION ALLEGATIONS

47. All of SeniorCare's EMTs and Paramedics in the State of New York

performed/perform the same duties as Plaintiffs.

48. All of SeniorCare's EMTs and Paramedics in the State of New York

performed/perform duties similar to those performed by Plaintiffs.

49. All of SeniorCare's EMTs and Paramedics in the State of New York spent/spend

most of their time engaged in physical labor.

50. All of SeniorCare's EMTs and Paramedics in the State of New York spent/spend

at least 25% of their time engaged in physical labor.

51. All of SeniorCare's EMTs and Paramedics in the State of New York were/are

manual workers.

52. All of SeniorCare's EMTs and Paramedics in the State of New York were/are

paid on a bi-weekly basis.

53. All of SeniorCare's employees in the State of New York did not receive a wage

notice within 10 days of hiring as required by NYLL § 195 (1) and NYLL § 198 (1-b).

54. Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure,

on behalf of themselves and the following classes:

7

7074733.1

(a) All EMTs and Paramedics who were/are employed by SeniorCare in the State of New York at any time from six years prior to the filing of this complaint to the present who were paid bi-weekly instead of weekly (the "SeniorCare Frequency Class"); and

(b) All individuals who were/are employed by SeniorCare in the State of New York at any time from six years prior to the filing of this complaint to the present who did not receive notices pursuant to NYLL § 195 (1) (the "SeniorCare Notice Class")(SeniorCare Frequency Class and SeniorCare Notice Class collectively "SeniorCare Classes").

55. There is diversity of citizenship between at least one class member of the SeniorCare Classes and the Defendants.

56. The amount in controversy considering all members of the SeniorCare Classes is in excess of $5,000,000.

57. The members of the SeniorCare Classes are so numerous that joinder of all members is impracticable. SeniorCare has in excess of 1,000 employees. The precise number of members of the SeniorCare Classes is known to the Defendants.

58. Common questions of law and fact exist as to the SeniorCare Classes that predominate over any questions only affecting members of the SeniorCare Classes individually, namely: (1) whether the EMTS and paramedics are "manual worker" positions; (2) whether the individuals employed by SeniorCare received a wage notice under NYLL § 195 (1); (3) whether the EMTS and paramedics were paid on a bi-weekly basis; and (4) the damages to which members of the SeniorCare Classes are entitled due to SeniorCare's failure to comply with NYLL § 191, NYLL § 195 (1), and/or NYLL § 198 (1-b).

59. The Plaintiffs' claims are typical of the claims of the SeniorCare Classes they seek to represent. Plaintiffs and all of the members of the SeniorCare Classes work, or have worked, in the State of New York for SeniorCare. Plaintiffs and all of the members of the SeniorCare Frequency Class have performed similar job duties and have spent more than 25% of

7074733.1

their time engaged in physical labor.  Plaintiffs and the SeniorCare Frequency Class have been paid bi-weekly rather than weekly.  Plaintiffs and all members of the SeniorCare Notice Class are entitled to notices under NYLL § 195 (1).  The Plaintiffs and the members of the SeniorCare Classes all enjoy the same statutory rights under NYLL § 191, NYLL § 195 (1) and NYLL § 198 (1-b).

60. Plaintiffs will fairly and adequately represent and protect the interests of the members of the SeniorCare Classes.  Plaintiffs understand that as class representatives, they assume a fiduciary responsibility to the SeniorCare Classes to represent their interests fairly and adequately.  Plaintiffs recognize that as class representatives, they must represent and consider the interests of the SeniorCare Classes just as they would represent and consider their own interests.  Plaintiffs understand that in decisions regarding the litigation and its possible settlement, they must not favor their own interests over the SeniorCare Classes.  Plaintiffs recognize that any resolution of a class action must be in the best interest of the SeniorCare Classes.  Plaintiffs understand that in order to provide adequate representation, they must be informed of developments in litigation, cooperate with class counsel, and testify at depositions and/or trial.

61. Plaintiffs have retained counsel competent and experienced in complex class actions and employment litigation.

62. There is no conflict between Plaintiffs and the members of the SeniorCare Classes.

63. A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the SeniorCare Classes have been damaged and are entitled to recovery as a result of SeniorCare's violations of NYLL § 191, NYLL § 195 (1)

9

and NYLL § 198 (1-b). Although the relative damages suffered by the individual members of the classes are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation. The individual members of the SeniorCare Classes lack the financial resources to vigorously prosecute individual lawsuits against SeniorCare to recover damages. In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about SeniorCare's practices.

64. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) as the questions of law and fact common to the members of the SeniorCare Classes predominate over any other questions affecting only individual members, and as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

65. This action is properly maintainable as a class action under Federal Rules of Civil Procedure 23(b)(1)(A) and 23(b)(1)(B) in that prosecuting separate actions by individual members of the SeniorCare Classes would create a risk of adjudications with respect to the individual members of the SeniorCare Classes that may establish incompatible standards of conduct for the parties opposing the SeniorCare Classes and/or that, as a practical matter, would be dispositive of the interests of the other members of the SeniorCare Classes not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

**Deployment Classes**

66. All SeniorCare EMTs and Paramedics deployed to perform work under the contract between FEMA and AMR in the State of New York performed the same duties as Plaintiffs.

10

7074733.1

67.  All SeniorCare EMTs and Paramedics deployed to perform work under the contract between FEMA and AMR in the State of New York performed duties similar to those performed by Plaintiffs.

68.  All SeniorCare EMTs and Paramedics deployed to perform work under the contract between FEMA and AMR in the State of New York spent most of their time engaged in physical labor.

69.  All SeniorCare EMTs and Paramedics deployed to perform work under the contract between FEMA and AMR in the State of New York spent at least 25% of their time engaged in physical labor.

70.  All SeniorCare EMTs and Paramedics deployed to perform work under the contract between FEMA and AMR in the State of New York were manual workers.

71.  All SeniorCare EMTs and Paramedics deployed to perform work under the contract between FEMA and AMR in the State of New York were paid on a bi-weekly basis.

72.  All SeniorCare EMTs and Paramedics deployed to perform work under the contract between FEMA and AMR in the State of New York were entitled to overtime, and did not receive overtime.

73.  Upon information and belief, all EMTs and Paramedics performing work under the contract between FEMA and AMR who were housed at the Holiday Inn received a daily meal stipend of $25.

74.  Upon information and belief, the meal stipend paid to all EMTs and Paramedics performing work under the contract between FEMA and AMR who were housed at the Holiday Inn was not included in the regular rate of pay for the purposes of computing overtime.

11

75. Plaintiffs bring this action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and the following classes:

(a) All SeniorCare EMTs and Paramedics performing work under the contract between FEMA and AMR who were/are deployed by Defendants in New York during the Covid-19 pandemic who were paid bi-weekly instead of weekly (the "Deployment Frequency Class");

(b) All SeniorCare EMTs and Paramedics performing work under the contract between FEMA and AMR who were/are deployed by Defendants in New York during the Covid-19 pandemic who were not paid overtime (the "Deployment Overtime Class"); and

(c) All EMTs and Paramedics performing work under the contract between FEMA and AMR who were/are housed by AMR at the Holiday Inn during the Covid-19 pandemic who received a daily $25 meal stipend (the "Meal Stipend Class") (the Deployment Frequency Class, Deployment Overtime Class, and Meal Stipend Class are collectively referred to herein as the "Deployment Classes").

76. There is diversity of citizenship between at least one class member of the Deployment Classes and the Defendants.

77. The amount in controversy considering all members of the Deployment Classes is in excess of $5,000,000.

78. The members of the Deployment Classes are so numerous that joinder of all members is impracticable. SeniorCare has in excess of 1,000 employees. The precise number of members of the Deployment Classes is known to the Defendants.

79. Common questions of law and fact exist as to the Deployment Classes that predominate over any questions only affecting members of the Deployment Classes individually, namely: (1) whether the EMTs and paramedics are "manual worker" positions; (2) whether the EMTs and paramedics were paid on a bi-weekly basis; (3) whether the EMTs and paramedics earned/received overtime; (4) whether the members of the Meal Stipend Class received a stipend of $25 each day (5) whether AMR and SeniorCare were required to include the amount of the

7074733.1

stipend in the regular rate of pay and (6) the damages to which members of the Deployment Classes are entitled.

80. The Plaintiffs' claims are typical of the claims of the Deployment Classes they seek to represent. Plaintiffs and all of the members of the Deployment Classes work, or have worked, in the State of New York. Plaintiffs and all of the members of the Deployment Frequency Class have performed similar job duties and have spent more than 25% of their time engaged in physical labor. Plaintiffs and members of the Deployment Frequency Class were paid bi-weekly instead of weekly. Plaintiffs and all members of the Deployment Overtime Class earned and are entitled to overtime. Plaintiffs and the members of the Meal Stipend Class all received a $25 meal stipend each day, and such amount was not included in their regular rate of pay. Plaintiffs and the members of the Deployment Classes all enjoy the same rights.

81. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Deployment Classes. Plaintiffs understand that as class representatives, they assume a fiduciary responsibility to the Deployment Classes to represent their interests fairly and adequately. Plaintiffs recognize that as class representatives, they must represent and consider the interests of the Deployment Classes just as they would represent and consider their own interests. Plaintiffs understand that in decisions regarding the litigation and its possible settlement, they must not favor their own interests over the Deployment Classes. Plaintiffs recognize that any resolution of a class action must be in the best interest of the Deployment Classes. Plaintiffs understand that in order to provide adequate representation, they must be informed of developments in litigation, cooperate with class counsel, and testify at depositions and/or trial.

13

82. Plaintiffs have retained counsel competent and experienced in complex class actions and employment litigation.

83. There is no conflict between Plaintiffs and the members of the Deployment Classes.

84. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. The members of the Deployment Classes have been damaged and are entitled to recovery as a result of Defendants' violations of, inter alia, New York's overtime laws, NYLL § 191, NYLL § 195 (1), NYLL § 195 (3), NYLL § 198 (1-b), and NYLL § 198 (1-d). Although the relative damages suffered by the individual members of the classes are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation. The individual members of the Deployment Classes lack the financial resources to vigorously prosecute individual lawsuits against Defendants to recover damages. In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

85. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) as the questions of law and fact common to the members of the Deployment Classes predominate over any other questions affecting only individual members, and as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

86. This action is properly maintainable as a class action under Federal Rules of Civil Procedure 23(b)(1)(A) and 23(b)(1)(B) in that prosecuting separate actions by individual members of the Deployment Classes would create a risk of adjudications with respect to the individual members of the Deployment Classes that may establish incompatible standards of

7074733.1

conduct for the parties opposing the Deployment Classes and/or that, as a practical matter, would be dispositive of the interests of the other members of the Deployment Classes not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

## COLLECTIVE ACTION ALLEGATIONS

87. Plaintiffs bring this action individually and on behalf of all others similarly situated pursuant to, inter alia, 29 U.S.C. § 216(b).   Plaintiffs and the similarly situated individuals worked as EMTs and Paramedics for Defendants.   The proposed collective(s) are defined as follows:

(a) All EMTs and Paramedics employed by SeniorCare and contracted out to AMR who were/are deployed by Defendants in New York during the Covid-19 pandemic who were not paid overtime (the "FLSA Overtime Collective"); and

(b) All EMTs and Paramedics performing work under the contract between FEMA and AMR who were/are housed by AMR at the Holiday Inn during the Covid-19 pandemic (the "Meal Stipend Collective")(the FLSA Overtime Collective and Meal Stipend Collective are collectively referred to herein as the "FLSA Collectives").

88. Plaintiffs have consented in writing to be a part of this action pursuant to 29 U.S.C. § 216(b) and their consent forms are attached hereto as Exhibit A.   As this case proceeds, it is likely that additional individuals will file consent forms and join as "opt-in" plaintiffs.

89. Plaintiffs and the FLSA Collectives are or were employed by Defendants within the meaning of the FLSA.

90. Plaintiffs and the FLSA Collectives worked substantial overtime hours for each week of their deployment for which they were not compensated.

7074733.1

91. Defendants required overtime work.  Defendants are aware that Plaintiffs and the FLSA Collectives worked overtime and despite that knowledge denied Plaintiffs and the FLSA Collectives overtime compensation.

92. Defendants' unlawful conduct is widespread, repetitious, and consistent affecting the Plaintiffs and the FLSA Collectives.

93. Defendants' conduct is willful and in bad faith and has caused significant damages to the Plaintiffs and the FLSA Collectives.

94. Defendants are and were aware of the FLSA's requirements.

95. Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the FLSA Collectives.

96. Notice of this action should be sent to the FLSA Collectives.  There are numerous similarly situated current and former employees of Defendants who have been denied appropriate compensation in violation of the FLSA, who would benefit from a Court supervised notice of the lawsuit and the opportunity to join the case.  Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

97. Each of the Defendants are covered by the FLSA as, inter alia, each Defendant does in excess of $500,000 per year in sales and engages in interstate commerce.

**FIRST CAUSE OF ACTION**
**Plaintiff Connors, Plaintiff Rubio and the SeniorCare Frequency Class against SeniorCare**
**Violations of NYLL §§ 191 and 198**

98. Plaintiffs repeat and reallege paragraphs 1 through 97 hereof, as if fully set forth herein.

99. Plaintiffs and the SeniorCare Frequency Class were/are employed by SeniorCare.

16

7074733.1

100.     Plaintiffs and the SeniorCare Frequency Class spent/spend most of their time engaged in physical labor.

101.     Plaintiffs and the members of the SeniorCare Frequency Class spent/spend at least 25% of their time engaged in physical labor.

102.     Plaintiffs and the members of the SeniorCare Frequency Class were/are manual workers as defined by the NYLL.

103.     Plaintiffs and the members of the SeniorCare Frequency Class were/are entitled to be paid on a weekly basis and no later than seven days after the workweek in which the wages were/are earned.

104.     SeniorCare willfully failed to pay the Plaintiffs and the members of the SeniorCare Frequency Class as frequently as required by NYLL § 191.

105.     SeniorCare willfully failed to pay wages to the Plaintiffs and the members of the SeniorCare Frequency Class within seven days after the end of each workweek in which wages were earned as required by NYLL § 191.

106.     Due to SeniorCare's violations of the NYLL, Plaintiffs and the members of the SeniorCare Frequency Class are entitled to recover from SeniorCare liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

107.     Due to SeniorCare's violations of the NYLL, Plaintiffs and the members of the SeniorCare Frequency Class have been damaged in an amount to be determined a trial.

### SECOND CAUSE OF ACTION
**Plaintiff Connors, Plaintiff Rubio and the SeniorCare Notice Class against SeniorCare
Violations of NYLL §§ 195 (1) and 198 (1-b)**

108.     Plaintiffs repeat and reallege paragraphs 1 through 107 hereof, as if fully set forth herein.

17

7074733.1

109.     Pursuant to Section 195(1) of the NYLL, an employer must furnish an employee with a notice listing, inter alia, the rate of pay, including overtime pay, whether the pay is hourly, daily, or weekly, the regular day on which pay is dispersed, the name of the employer and its contact information, and any allowances taken.

110.     This notice must be provided in English and in the language identified by each employee as the primary language of such employee, at the time of hiring and must be maintained by the employer for six (6) years.

111.     Prior to February 27, 2015, an employee not furnished with a compliant wage notice within 10 days of hiring was entitled to damages of fifty dollars for each workweek that the violations occurred or continue to occur.

112.     On and after February 27, 2015, an employee not furnished with a compliant wage notice within 10 days of hiring is entitled to damages of fifty dollars for each workday that the violations occurred or continue to occur.

113.     At all relevant times SeniorCare failed to comply with NYLL § 195 (1) by, inter alia, failing to provide Plaintiffs and the members of the SeniorCare Notice Class with the required wage notices and/or failing to give Plaintiffs and the members of the SeniorCare Notice Class copies of the notices for their records.

114.     Due to SeniorCare's violations of the NYLL, Plaintiffs and the members of the SeniorCare Notice Class are entitled to recover from SeniorCare the statutory damages provided by NYLL § 198 (1-b).

7074733.1

**THIRD CAUSE OF ACTION**
**Plaintiff Connors, Plaintiff Rubio and the Deployment Overtime Class against Defendants**
**Failure to pay overtime in violation of NYLL**

115.     Plaintiffs repeat and reallege paragraphs 1 through 114 hereof, as if fully set forth herein.

116.     Plaintiffs and the Deployment Overtime Class were employees of Defendants within the definition of the NYLL.

117.     Defendants were employers of Plaintiffs and the Deployment Overtime Class within the definition of the NYLL.

118.     Pursuant to NYLL, Plaintiffs and the Deployment Overtime Class were to be paid time and a half their regular rate for all hours worked per week in excess of 40.

119.     Each week during their deployment, Plaintiffs and the Deployment Overtime Class worked substantial overtime and were not compensated for same.

120.     Defendants were aware of the overtime worked by Plaintiffs and the Deployment Overtime Class and Defendants failure to compensate Plaintiffs and the Deployment Overtime Class for their overtime worked was in bad faith and willful within the meaning of all pertinent laws and statutes including the NYLL.

121.     As a result of the foregoing, Plaintiffs and the Deployment Overtime Class are entitled to damages in an amount to be determined at trial which includes, but is not limited to, the unpaid overtime wages, liquidated damages, interest, and attorneys' fees, costs and disbursements.

7074733.1

**FOURTH CAUSE OF ACTION**
**Plaintiff Connors, Plaintiff Rubio and the Meal Stipend Class against Defendants**
**Failure to pay overtime in violation of NYLL**

122.     Plaintiffs repeat and reallege paragraphs 1 through 121 hereof, as if fully set forth herein.

123.     Plaintiffs and the Meal Stipend Class were employees of Defendants within the definition of the NYLL.

124.     Defendants were employers of Plaintiffs and the Meal Stipend Class within the definition of the NYLL.

125.     Pursuant to NYLL, Plaintiffs and the Meal Stipend Class were to be paid time and a half their regular rate for all hours worked per week in excess of 40.

126.     Upon information and belief, for purposes of computing overtime, the Defendants did not include the meal stipend in the regular rate of pay.

127.     Upon information and belief, each week during their deployment, Plaintiffs and the Meal Stipend Class worked substantial overtime.

128.     Upon information and belief, the Plaintiffs and the Meal Stipend Class were not compensated at one and one half their actual regular rate of pay for all hours worked per week in excess of 40.

129.     The failure to compensate Plaintiffs and the Meal Stipend Class for their overtime worked at the appropriate overtime rate was in bad faith and willful within the meaning of all pertinent laws and statutes including the NYLL.

130.     As a result of the foregoing, Plaintiffs and the Meal Stipend Class are entitled to damages in an amount to be determined at trial which includes, but is not limited to,

7074733.1

the unpaid overtime wages, liquidated damages, interest, and attorneys' fees, costs and disbursements.

### FIFTH CAUSE OF ACTION
**Plaintiff Connors, Plaintiff Rubio and the FLSA Overtime Collective against Defendants**
**Failure to pay overtime in violation of FLSA**

131.     Plaintiffs repeat and reallege paragraphs 1 through 130 hereof, as if fully set forth herein.

132.     The FLSA requires covered employers to pay non-exempt employees no less than one-and-one-half times their regular rate of pay for all hours worked in excess of 40 in a workweek.

133.     Plaintiffs and the FLSA Overtime Collective were employees of Defendants within the definition of the FLSA.

134.     Defendants were employers of Plaintiffs and the FLSA Overtime Collective within the definition of the FLSA.

135.     Each week during their deployment, Plaintiffs and the FLSA Overtime Collective worked substantial overtime and were not compensated for same.

136.     Defendants were aware of the overtime worked by Plaintiffs and the FLSA Overtime Collective and Defendants failure to compensate Plaintiffs and the FLSA Overtime Collective for their overtime worked was in bad faith and willful within the meaning of all pertinent laws and statutes including the FLSA.

137.     As a result of the foregoing, Plaintiffs and the FLSA Overtime Collective are entitled to damages in an amount to be determined at trial which includes, but is not limited to, the unpaid overtime wages, liquidated damages, interest, and attorneys' fees, costs and disbursements.

7074733.1

## SIXTH CAUSE OF ACTION
### Plaintiff Connors, Plaintiff Rubio and the Meal Stipend Collective against Defendants
### Failure to pay overtime in violation of FLSA

138.     Plaintiffs repeat and reallege paragraphs 1 through 137 hereof, as if fully set forth herein.

139.     The FLSA requires covered employers to pay non-exempt employees no less than one-and-one-half times their regular rate of pay for all hours worked in excess of 40 in a workweek.

140.     With limited exceptions not applicable here, the regular rate must include all forms of non-overtime compensation paid to employees.

141.     Plaintiffs and the Meal Stipend Collective were employees of Defendants within the definition of the FLSA.

142.     Defendants were employers of Plaintiffs and the Meal Stipend Collective within the definition of the FLSA.

143.     Each week during their deployment, Plaintiffs and the Meal Stipend Collective worked substantial overtime.

144.     Upon information and belief, for purposes of computing overtime, the Defendants did not include the meal stipend in the regular rate of pay.

145.     Upon information and belief, each week during their deployment, Plaintiffs and the Meal Stipend Class were not compensated at one and one half their actual regular rate of pay for all hours worked per week in excess of 40.

146.     Defendants were aware of the overtime worked by Plaintiffs and the Meal Stipend Collective and Defendants failure to compensate Plaintiffs and the Meal Stipend

22

Collective for their overtime worked was in bad faith and willful within the meaning of all pertinent laws and statutes including the FLSA.

147.     As a result of the foregoing, Plaintiffs and the Meal Stipend Collective are entitled to damages in an amount to be determined at trial which includes, but is not limited to, the unpaid overtime wages, liquidated damages, interest, and attorneys' fees, costs and disbursements.

## SEVENTH CAUSE OF ACTION
**Plaintiff Connors, Plaintiff Rubio and the Deployment Frequency Class against Defendants
Violations of NYLL §§ 191 and 198**

148.     Plaintiffs repeat and reallege paragraphs 1 through 147 hereof, as if fully set forth herein.

149.     Plaintiffs and the Deployment Frequency Class were/are employed by Defendants.

150.     Plaintiffs and the Deployment Frequency Class spent/spend most of their time engaged in physical labor.

151.     Plaintiffs and the members of the Deployment Frequency Class spent/spend at least 25% of their time engaged in physical labor.

152.     Plaintiffs and the members of the Deployment Frequency Class were/are manual workers as defined by the NYLL.

153.     Plaintiffs and the members of the Deployment Frequency Class were/are entitled to be paid on a weekly basis and no later than seven days after the workweek in which the wages were/are earned.

154.     Defendants willfully failed to pay the Plaintiffs and the members of the Deployment Frequency Class as frequently as required by NYLL § 191.

7074733.1

155.     Defendants willfully failed to pay wages to the Plaintiffs and the members of the Deployment Frequency Class within seven days after the end of each workweek in which wages were earned as required by NYLL § 191.

156.     Due to Defendants' violations of the NYLL, Plaintiffs and the members of the Deployment Frequency Class are entitled to recover from Defendants liquidated damages, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

157.     Due to Defendants' violations of the NYLL, Plaintiffs and the members of the Deployment Frequency Class have been damaged in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all other similarly situated persons, respectfully request that the Court grant the following relief:

a)  Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b)  Certification of this case as a collective action;

c)  Designation of Plaintiffs as representatives of the classes and counsel of record as class counsel;

d)  On the first cause of action, liquidated damages, reasonable attorneys' fees, costs and disbursements, and pre-judgment and post-judgment interest in an amount to be determined at trial;

e)  On the second cause of action, statutory damages provided by NYLL § 198 (1-b);

f)  On the third cause of action, damages in an amount to be determined at trial which includes, but is not limited to, unpaid overtime wages, liquidated damages, interest, and attorneys' fees, costs and disbursements;

24

g) On the fourth cause of action, damages in an amount to be determined at trial which includes, but is not limited to, unpaid overtime wages, liquidated damages, interest, and attorneys' fees, costs and disbursements;

h) On the fifth cause of action, damages in an amount to be determined at trial which includes, but is not limited to, unpaid overtime wages, liquidated damages, interest, and attorneys' fees, costs and disbursements;

i) On the sixth cause of action, damages in an amount to be determined at trial which includes, but is not limited to, unpaid overtime wages, liquidated damages, interest, and attorneys' fees, costs and disbursements;

j) On the seventh cause of action, liquidated damages, reasonable attorneys' fees, costs, and disbursements and pre-judgment and post-judgment interest in an amount to be determined at trial;

k) Liquidated damages permitted pursuant to NYLL/FLSA;

l) Statutory damages permitted pursuant to NYLL;

m) Prejudgment interest;

n) Post-Judgment interest;

o) Reasonable attorneys' fees and costs of the action;

p) A reasonable service award to compensate Plaintiffs for the time they have spent and will spend attempting to recover damages for the members of the classes and for the risks they take in doing so;

q) Appropriate injunctive and declaratory relief; and

r) Such other relief as this Court shall deem just and proper.

25

7074733.1

**JURY DEMAND**

Plaintiffs demand a trial by jury on all claims properly triable by a jury.

Dated: Huntington, New York
       July 1, 2020

Respectfully Submitted,

MOSER LAW FIRM, P.C.

By: _____Paul Pagano_____

Steven J. Moser, Esq.
Paul A. Pagano, Esq.
*Attorneys for Plaintiffs*
5 East Main Street
Huntington, NY 11743
(516) 671-1150
(631) 759-9766
steven.moser@moserlawfirm.com
paul.pagano@moserlawfirm.com

26

7074733.1

EXHIBIT A

## CONSENT TO JOIN COLLECTIVE ACTION

I am/was employed by Defendants in the position of _EMT_____.

Pursuant to Section 16(b) of the Fair Labor Standards Act, I hereby consent to be a party plaintiff in a collective action brought in the United States District Court for the Southern District of New York entitled *Connors et. al. v. American Medical Response, Inc. et. al.,* to recover unpaid overtime wages and other sums owing to me and to other, similarly-situated employees under the FLSA and other applicable federal and state laws.  I hereby authorize Moser Law Firm, P.C. to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

06/30/2020
_____
Date

_____
Signature

Joseph Connors
_____
Print Name

26

7074733.1

## CONSENT TO JOIN COLLECTIVE ACTION

I am/was employed by Defendants in the position of <u>Paramedic</u>.

Pursuant to Section 16(b) of the Fair Labor Standards Act, I hereby consent to be a party plaintiff in a collective action brought in the United States District Court for the Southern District of New York entitled *Connors et. al. v. American Medical Response, Inc. et. al.*, to recover unpaid overtime wages and other sums owing to me and to other, similarly-situated employees under the FLSA and other applicable federal and state laws.  I hereby authorize Moser Law Firm, P.C. to pursue any claims I may have, including such litigation as may be necessary, and I hereby consent, agree, and option to become a plaintiff herein and to be bound by any settlement of this action or adjudication by the Court.

06/30/2020
Date

Signature

Jose C. Luna Rubio
Print Name

26

7074733.1

# EXHIBIT B

DocuSign Envelope ID: 6672B2AD-B558-480F-680A-2A3150BB2237A
Case 1:20-cv-05046-KHP   Document 28-1   Filed 03/05/21   Page 1 of 22

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

JOSEPH CONNORS and JOSE LUNA RUBIO,
individually and on behalf of all others similarly
situated,

    Plaintiffs,

    v.

AMERICAN MEDICAL RESPONSE and
SENIORCARE EMERGENCY MEDICAL
SERVICES, INC.,

    Defendants.

    Case No.: 20-cv-5046

------------------------------------------------x

## CLASS SETTLEMENT AGREEMENT AND RELEASE

  WHEREAS, Plaintiffs Joseph Connors and Jose Luna Rubio (the "Named Plaintiffs"), individually and on behalf of a putative class of individuals the Named Plaintiffs purport to represent (the "Settlement Class"), and Defendants American Medical Response, Inc. ("AMR") and SeniorCare Emergency Medical Services, Inc. ("SeniorCare") (collectively, "Defendants"), desire to resolve, settle and agree to dismiss with prejudice any and all claims which the Named Plaintiffs have made in or by the Complaint filed in the above-captioned action pending in the U.S. District Court for the Southern District of New York, Case No. 20-CV-5046 (AJN)(KHP) (the "Lawsuit"), without further litigation or adjudication;

  WHEREAS, the Named Plaintiffs and Defendants have chosen to enter into this Class Settlement Agreement and Release ("Agreement") to avoid further proceedings with respect to any and all claims the Named Plaintiffs have made individually or on behalf of the Settlement Class for alleged unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), and alleged unpaid overtime wages, and pay notice penalties under the New York Labor Law ("NYLL") (referred to as the "Wage Claims") against Defendants in this Lawsuit. Among the claims the Named Plaintiffs will be releasing are their claims for alleged violations of NYLL §§ 191 and 198 for failing to pay the Named Plaintiffs in accordance with NYLL § 191(1)(a)(the "Frequency Claims").

  WHEREAS, the Named Plaintiffs and Defendants understand and agree that Defendants deny each and every allegation of wrongdoing, including, but not limited to, the allegations and statements contained in pleadings in the Lawsuit and any other matter or thing whatsoever;

DocuSign Envelope ID: 6672B2AD-B558-488F-680A-2A35D8B52378

WHEREAS, a *bona fide* dispute exists as to the Named Plaintiffs' Wage Claims for themselves and for the Settlement Class;

WHEREAS, the Named Plaintiffs and Defendants understand and agree that neither the making of this Agreement nor anything contained herein shall be construed or considered in any way to be an admission by Defendants or any other person or entity of guilt or noncompliance with any federal, state, or local statute, order, regulation, or ordinance, public policy, tort law, contract (whether oral or written, express or implied), common law, Defendants' practices, policies, benefit plans, compensation plans or procedures, or of any other wrongdoing whatsoever; and,

WHEREAS, upon Court approval of this Agreement the Lawsuit shall be dismissed in its entirety and with prejudice upon the entry of an Order for same consistent with the Parties' Agreement as set forth below;

NOW THEREFORE, IT IS STIPULATED AND AGREED BY AND BETWEEN THE PARTIES that:

1. **DEFINITIONS**.

The defined terms set forth in this Agreement have the meanings ascribed to them as set forth below.

1.1. **Acceptance Period.** "Acceptance Period" means the date by which any Class Member who wishes to qualify as an Authorized Claimant must timely file a Claim Form with the Claims Administrator pursuant to Section 2.5 of this Agreement, which shall be: (i) forty-five (45) days from the date of the Claims Administrator's initial mailing/emailing of the Notice and Claim Form (or as otherwise set by the Court); and (ii) an additional fifteen (15) days for any Class Member who did not receive the Notice, or who was unable to file the Claim Form within the original forty-five (45) days from mailing/emailing allotted due to such factors as change of address, military service, hospitalization, or other extraordinary circumstances.

1.2. **Agreement.** "Agreement" means this Negotiated Class Settlement Agreement and Release.

1.3. **Authorized Claimant.** "Authorized Claimant" means each Class Member, or the authorized legal representative of such Class Member, who timely files a Claim Form in accordance with the terms of this Agreement, and who is therefore entitled to receive a Settlement Check. The Named Plaintiffs are deemed Authorized Claimants upon execution of this Agreement and need not return a claim form.

1.4. **Claim Form.** "Claim Form" means the form, a copy of which is attached to the Notice of Settlement of Class Action Lawsuit, that Class Members must sign and return during the Acceptance Period to become an Authorized Claimant.

DocuSign Envelope ID: 6672B2AD-B558-488F-680A-84350BB2371B

1.5.   **Class Counsel or Plaintiffs' Counsel.** "Class Counsel or Plaintiffs' Counsel" means Steven J. Moser and Paul Pagano of the Moser Law Firm, P.C., 5 East Main Street, Huntington, NY 11743.

1.6.   **Class List.** "Class List" means a list in electronic format, preferably in Microsoft Excel, that includes (to the extent known) the names, last known addresses, last known telephone numbers, last known email addresses, and dates and hours the Class Member was assigned to the New York COVID deployment.

1.7.   **Class Members.** "Class Members" means the Named Plaintiffs, Opt-In Plaintiffs, and all individuals who performed work as Emergency Medical Technicians or Paramedics in connection with a deployment in New York in response to the COVID-19 pandemic during the period beginning March 29, 2020 and continuing through May 30, 2020 (the "New York COVID deployment").

1.8.   **Class Representatives.** "Class Representatives" means Named Plaintiffs Joseph Connors and Jose Luna Rubio.

1.9.   **Costs and Fees.** "Costs and Fees" means, collectively, Class Counsel's attorneys' fees, costs, and expenses; and the costs and fees associated with the Settlement Claims Administrator.

1.10.   **Court.** "Court" means the U.S. District Court for the Southern District of New York, located at 500 Pearl Street, New York, New York 10007.

1.11.   **Days.** "Days" means calendar days.

1.12.   **Defendants.** "Defendants" means American Medical Response and SeniorCare Emergency Medical Services, Inc.

1.13.   **Defendants' Counsel.** "Defendants' Counsel" means Brendan Sweeney, Esq. of Jackson Lewis P.C., 58 South Service Road, Suite 250, Melville, New York 11747.

1.14.   **Employer.** "Employer" means Defendant SeniorCare.

1.15.   **Employer-Side Employment Taxes.** "Employer-Side Employment Taxes" means all taxes and withholdings Defendant SeniorCare is required to make arising out of or based upon the payment of taxable employment compensation arising from this settlement, including but not limited to FICA, FUTA, and SUTA obligations.

1.16.   **Employee-Side Employment Taxes.** "Employee-Side Employment Taxes" means all ordinary and regular taxes required to be withheld from an employee's compensation or other income.

1.17.   **Final Effective Date.** "Final Effective Date" means thirty (30) days after the Court has entered the Final Approval Order, and the time to appeal from the Final

Approval Order has expired and no notice of appeal has been filed or if a notice of appeal is filed, the latest of the following, if applicable, has occurred: (1) any appeal from the Final Approval Order has been finally dismissed; (2) the Final Approval Order has been affirmed on appeal in a form substantially identical to the form of the Final Approval Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Approval Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Approval Order in a form substantially identical to the form of the Final Approval Order entered by the Court.

1.18. **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

1.19. **Final Approval Order.** "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms of this Agreement, dismissing the Complaint with prejudice, and entering a judgment consistent with the Parties' settlement terms.

1.20. **Individual Gross Amount.** "Individual Gross Amount" means the amount allocated to each individual Authorized Claimant pursuant to Section 3.5(B), prior to any deduction for Employee-Side Employment Taxes required to be withheld from employee compensation or other income.

1.21. **Individual Net Amount.** "Individual Net Amount" means the amount paid to the individual Authorized Claimants after deduction for Employee-side Employment Taxes required to be withheld from employee compensation or other income, pursuant to Section 3.5.

1.22. **Maximum Settlement Amount.** "Maximum Settlement Amount" means One Hundred Sixty Thousand Dollars and Zero Cents ($160,000.00), which is the maximum amount Defendant SeniorCare will pay to settle the Wage Claims and the Named Plaintiffs' individual Frequency Claims as set forth in this Agreement, exclusive of Defendant SeniorCare's obligation to pay the Employer-Side Employment Taxes.

1.23. **Motion for Final Approval.** "Motion for Final Approval" means the Motion for Final Approval of Settlement, Payment of Service Award, and Payment of Class Counsel's Legal Fees and Costs, and other documents to be filed with the Court seeking final approval of the settlement.

1.24. **Named Plaintiffs.** "Named Plaintiffs" means Joseph Connors and Jose Luna Rubio.

1.25. **Net Settlement Fund.** "Net Settlement Fund" means the remainder of the Qualified Settlement Fund after deductions for: (1) the Settlement Claim Administrator's fees and costs; (2) Court-approved attorneys' fees and costs for Class Counsel; (3) payment to the Named Plaintiffs for their individual Frequency

4

DocuSign Envelope ID: 6672B2AD-B558-488F-680A-24355DBB2237B

Claims; and (4) Court-approved Service Awards made in return for an individual general release from each Class Representative requesting a Service Award.

**1.26.** **Notice(s).** "Notice(s)" means the Court-approved Notice of Proposed Settlement of Class Action and Collective Action Lawsuit, attached to this Agreement as Exhibit "A".

**1.27.** **Notice Response Deadline or Bar Date.** "Notice Response Deadline" or "Bar Date" means the last day of the forty-five (45) day Acceptance Period in which Class Members can timely complete and submit their Claim Form or opt-out of the settlement.

**1.28.** **Objector.** "Objector" means an individual who timely files an objection to the settlement.

**1.29.** **Opt-In Plaintiffs.** "Opt-In Plaintiffs" means the Named Plaintiffs, and any Class Members who timely complete and submit a Claim Form within the Acceptance Period.

**1.30.** **Opt-out Statement.** "Opt-out Statement" means a written signed statement that an individual Class Member has decided to opt-out of the settlement and not be included in this Agreement.

**1.31.** **Parties.** "Parties" means the Named Plaintiffs and Defendants.

**1.32.** **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notices to the Class Members, attached to this Agreement as Exhibit "B".

**1.33.** **Qualified Settlement Fund ("QSF").** "Qualified Settlement Fund ('QSF')" means the account established by the Settlement Claims Administrator for the settlement funding paid by Defendant SeniorCare. The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval. Interest, if any, earned on the QSF, will become part of the Net Settlement Fund.

**1.34.** **Released Claims.** "Released Claims" mean all claims as set forth in Section 4 of this Agreement.

**1.35.** **Settlement Claims Administrator.** "Settlement Claims Administrator" will be Analytics Consulting LLC, which was selected by the Parties and subject to approval by the Court, whose responsibilities will include to mail/email the Notices and Claim Forms to Class Members, and administer the calculation, allocation, and distribution of the QSF. The Settlement Claims Administrator's fees are not expected to exceed Five Thousand Dollars ($5,000), and shall be borne by the QSF.

DocuSign Envelope ID: 6672B2AD-B558-488F-930A-34350BB32378

**1.36.** **Settlement Checks.** "Settlement Checks" means the set of checks issued to Authorized Claimants for their share of the Net Settlement Fund calculated in accordance with the terms and conditions set forth in this Agreement.

**2.** **APPROVAL AND PROCEDURE.**

**2.1.** **Binding Agreement.** This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Lawsuit.

**2.2.** **Settlement Class.** Strictly for purposes of this Agreement, and without admitting any wrongdoing or liability, Defendant SeniorCare agrees to class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure to include all Class Members as defined in Section 1.7 of this Agreement.

**2.3.** **Settlement Claims Administrator.**

**A.** **Retention.** The Parties have agreed that Analytics Consulting LLC shall serve as the Settlement Claims Administrator for an estimated fee of Five Thousand Dollars ($5,000) (the "Claims Administrator Fee").

**B.** **Funding Settlement Claims Administrator.** The Settlement Claims Administrator shall be paid out of the QSF.

**C.** **Responsibilities of Settlement Claims Administrator.** The Settlement Claims Administrator shall be responsible for: (i) preparing, printing and disseminating to Class Members the Notice and Claim Form; (ii) copying counsel for all Parties on material correspondence; (iii) tracking and promptly furnishing Class Counsel and Defendants' Counsel with copies of objections, Opt-out Statements, or other written or electronic communications from Class Members that the Settlement Claims Administrator receives; (iv) receiving, retaining and reviewing the Claims Forms submitted by Class Members; (v) mailing the Settlement Checks to Authorized Claimants; (vi) preparing and mailing Class Counsel's attorneys' fees, expenses, and costs, and Service Awards in accordance with this Agreement and/or any Order of the Court; (vii) administering all payroll tax obligations of Defendant SeniorCare, including issuing the W-2 and 1099 Forms for all amounts paid to the Authorized Claimants; (viii) responding to inquiries of Class Counsel and Defendants' Counsel consistent with the Settlement Claims Administrator's duties specified herein; (ix) maintaining adequate records of its activities, including the dates of the mailing/emailing of any Notice and mailing/emailing and receipt of Claim Form(s), returned mail/email and other communications and attempted written or electronic communications with Class Members; (x) providing Class Counsel and Defendants' Counsel with all information, documents, and calculations necessary to determine the Net Settlement Fund and each Authorized Claimant's pro rata share or

DocuSign Envelope ID: 6672B2AD-B5E8-48BF-820A-2A35D8B92378

allocation of the Net Settlement Fund; (xi) providing Class Counsel and Defendants' Counsel with updates of the number and identity of Authorized Claimants, objections, and Opt-out Statements; (xii) throughout the period of claims administration, the Settlement Claims Administrator will provide reports to the Parties upon request by either Party, regarding the status of the mailing of the Notices and Claims Forms to Class Members, Authorized Claimants, the claims administration process, distribution of the Settlement Checks, or any other aspect of the claims administration process, subject to the terms of this Agreement; and, (xiii) such other tasks as the Parties mutually agree.   Other than as set forth herein, the Settlement Claims Administrator shall not initiate communications with any Class Member.

No later than fifteen (15) days prior to the Fairness Hearing, the Settlement Claims Administrator shall certify in writing jointly to Class Counsel and Defendants' Counsel: (i) the number of Authorized Claimants; (ii) a list of all Class Members who filed a timely objection; (c) a list of all Class Members who timely filed an Opt-out Statement, and (d) the aggregate claimed from the Net Settlement Fund by all Authorized Claimants.

**D.**  **Access to the Settlement Claims Administrator**. The Parties will have equal access to the Settlement Claims Administrator. Class Counsel and Defendants' Counsel agree to use their best efforts to cooperate with the Settlement Claims Administrator and provide reasonable assistance in administering the settlement.

## 2.4.  Preliminary Approval Motion.

**A.**  Following the Parties' execution of this Agreement, Class Counsel shall file a Motion for Preliminary Approval of the Class Action Settlement ("Preliminary Approval Motion").

**B.**  The Preliminary Approval Motion shall include: (1) the proposed Notice and Claim Form; (2) the proposed Preliminary Approval Order; (3) an executed copy of this Agreement; and (3) any other necessary documents, memorandum, affidavits and exhibits for the purposes of certifying, for settlement purposes only, a class pursuant to Fed. R. Civ. P. 23 of all Class Members and preliminarily approving the settlement. Class Counsel shall submit to Defendants' Counsel for comment and review at least seven (7) days prior to filing the (i) Notice of Motion for Preliminary Approval of the Settlement; (ii) Memorandum of Law and all declaration(s), document(s), and other motion papers in support thereof.

**C.**  In the Motion for Preliminary Approval, Class Counsel will inform the Court of the intended process to obtain the Final Approval Order that will, among other things, seek to: (1) approve the settlement as fair, adequate,

DocuSign Envelope ID: 6672B2AD-B558-480F-630A-263350BB2237B

and reasonable; (2) incorporate the terms of the release of Released Claims as described herein; (3) dismiss the Litigation with prejudice; (4) award Class Counsel fees and costs; and (5) award the Service Award to Named Plaintiffs.

**D.**     If the Court denies the Preliminary Approval Motion, the Lawsuit will proceed as if no settlement had been attempted. Defendants retain the right to contest whether the Lawsuit should be maintained as a class action or collective action and to contest the merits of the claims being asserted in the Lawsuit.

**E.**     The Parties will work together, diligently and in good faith, to expeditiously obtain a Preliminary Approval Order, Final Approval Order, and Dismissal of the Lawsuit.

**2.5.**   <u>**Notice and Claim Forms to Class Members**</u>.

**A.**     Within fifteen (15) days of the issuance of the Preliminary Approval Order, Defendant SeniorCare will provide the Settlement Claims Administrator, in electronic form, the following information for all Class Members: name, telephone number, social security number, last known address, and e-mail address as that information exists on file with Defendant SeniorCare. All such information provided to the Settlement Claims Administrator will also be provided to Class Counsel, except for the Class Members' last known addresses and social security numbers.

**B.**     Within fifteen (15) days after Defendant SeniorCare provides the information set forth in Paragraph 2.5(A) to the Settlement Claims Administrator, the Settlement Claims Administrator shall mail to all Class Members, at the addresses provided by Defendant SeniorCare, via First Class United States Mail, postage prepaid, the Court-approved Notice and Claim Form. The Court-approved Notice and Claim Form shall also be emailed to all Class Members.

**C.**     The Settlement Claims Administrator shall notify Class Counsel and Defendants' Counsel of any Notice and Claim Form sent to a Class Member that is returned as undeliverable after the first mailing/emailing, as well as any such Notice and Claim Form returned as undeliverable after any subsequent mailing(s)/emailings as set forth in this Agreement. Nothing herein precludes the Settlement Claims Administrator from re-mailing/re-emailing a Notice and Claim Form to a Class Member in the event such a re-mailing/re-emailing becomes necessary. Further, if a Notice and Claim Form is returned as undeliverable, the Settlement Claims Administrator shall take all reasonable steps to obtain a current address, including one skip trace, and shall re-mail the Notice and Claim Form to such address. All costs of locating Class Members will be paid from the QSF. In the event that Class Counsel is able to obtain better

DocuSign Envelope ID: 6672B2AD-B558-488F-080A-2435D8B32378

addresses/email addresses for any Class Member, Class Counsel may provide such addresses/email addresses to the Settlement Claims Administrator to be used for the purposes of mailing the Notice and Claim Form.

**D.**    Class Members who return their completed Claim Form by the Bar Date will be deemed Authorized Claimants.  To be effective for the purposes of becoming an Authorized Claimant, a Claim Form must be post-marked, faxed, or emailed to the Settlement Claims Administrator by the Bar Date. To the extent that the envelope does not contain a post-mark, the date that the Settlement Claims Administrator stamps the envelope or Claim Form "received," shall apply.

**2.6.    Opt-Outs: Class Members who Opt-Out of the Settlement.**

**A.**    Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail to the Settlement Claims Administrator an Opt-out Statement via First Class United States Mail, postage prepaid.  Such Opt-out Statement must state that the Class Member is opting out of the settlement, and include his or her name, job title, address, and telephone number and must also state the following words, "I opt out from the settlement in *Connors, et al. v. American Medical Response, Inc. and SeniorCare Emergency Medical Services, Inc.*" in order to be valid.  In addition, to be effective, an Opt-out Statement must be postmarked within forty-five (45) days after the Settlement Claims Administrator mails the Notice and Claim Form to such Class Member.

**B.**    The end of the time-period for a Class Member to opt-out of the settlement ("Opt-out Period") shall be forty-five (45) days after the day on which the Settlement Claims Administrator successfully mails a Notice and Claim Form to a Class Member.

**C.**    The Settlement Claims Administrator will, within ten (10) days after the last day on which it mails the last Notice and Claim Form to any Class Member, notify Class Counsel and Defendants' Counsel in writing by email of the precise date of the end of the Opt-out Period.

**D.**    The Settlement Claims Administrator shall stamp the postmark date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendants' Counsel not later than three (3) business days after receipt thereof.  Class Counsel shall file with the Clerk of the Court stamped copies of all Opt-out Statements with the Motion for Final Approval (as defined below).  The Settlement Claims Administrator will, within 24 hours after the end of the Opt-out Period, send a final list of all Opt-out Statements it received to Class Counsel and Defendants' Counsel along with copies of all Opt-out Statements and all envelopes accompanying same.  The Settlement Claims

> Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

E.    Any Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement, and will, by means of the Final Approval Order, release all claims as set forth therein.

F.    Defendants shall have the right to revoke this Agreement in the event 10% or more of the Class Members file Opt-out Statements requesting to be excluded from the class settlement by the deadline set by the Court for the submission of Opt-out Statements.

2.7.  **Objections to the Settlement.**

A.    Objectors who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Settlement Claims Administrator via First-Class United States Mail, postage prepaid, and be received by the Settlement Claims Administrator by a date certain no more than forty-five (45) days after the Settlement Claims Administrator mails a Notice to such Objector, unless a new mailing is sent as set forth in Section 2.5(C), at which time the date until which that Objector may opt-out controls. The statement must include all reasons for the objection and any reasons not included in the statement will not be considered. The statement must also include the name, job title, address, and telephone numbers for the Class Member making the objection. It must also contain the words, "I object to the settlement in *Connors, et al. v. American Medical Response, Inc. and SeniorCare Emergency Medical Services, Inc.*" The Settlement Claims Administrator will stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email no later than three (3) days after receipt thereof. Class Counsel shall file the date-stamped copies of all objections with the Court with the Motion for Final Approval.

B.    An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits same to the Claims Administrator. An Objector may withdraw his or her objections at any time. No Objector may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections. A Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement, and an Opt-out Statement will take precedence over a submitted objection, unless directed otherwise by the Court.

DocuSign Envelope ID: 6672B2AD-B5E8-488F-980A-8135D8B22379

    **C.**    The Parties may file with the Court written responses to any objections filed by an Objector prior to the Fairness Hearing.

**2.8.**    <u>Fairness Hearing and Motion For Final Approval and Dismissal</u>.

    **A.**    After the Bar Date, consistent with the Court's ruling on the Motion for Preliminary Approval, Class Counsel will prepare the Motion for Final Approval. Class Counsel and Defendants' Counsel shall prepare the Final Approval Order. For settlement purposes only, Defendants will not oppose the Motion for Final Approval.

    **B.**    At the Fairness Hearing and in the Motion for Final Approval, the Parties will request that the Court, among other things: (1) certify the Class for purposes of settlement; (2) approve this settlement and Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely filed an Opt-out Statement; (3) order the Settlement Claims Administrator to distribute Settlement Checks from the Net Settlement Fund to Authorized Claimants and Service Awards to the Class Representatives to be paid as described in this Agreement; (4) order the attorneys' fees and costs to be paid to Class Counsel; (5) order the dismissal with prejudice of all claims asserted in the Lawsuit by the Named Plaintiffs and the unpaid overtime and notice claims of all Class Members who did not timely file an Opt-out Statement; and (6) retain jurisdiction as necessary for the purpose of filing consent-to-join forms from the Authorized Claimants as set forth in their Settlement Checks and other relief.

    **C.**    If the Court fails to enter the Final Approval Order in accordance with this Agreement, or if the Final Approval Order is set aside by appeal, the Lawsuit will proceed as if there were no attempt at settlement. Defendants may contest whether the Lawsuit should be maintained as a class action or collective action, and may contest the merits of the claims being asserted in the Lawsuit.

    **D.**    If the Court fails to enter a Final Approval Order, the Settlement Claims Administrator will provide notice to Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Class Members under the Agreement. The content of such notice shall be agreed to by the Parties and such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Settlement Claims Administrator in mailing the most recent copy of the Notice and Claim Form to respective Class Members. In the event of such occurrence, Defendant SeniorCare shall be responsible for the reasonable fees of the Settlement Claims Administrator in the event the Court fails to enter a Final Approval Order, and in the event the Parties are unable to reach an agreement to resolve the Lawsuit.

DocuSign Envelope ID: 6672B2AD-B5E8-488F-980A-2135D9B22356

E.   The Final Approval Order will direct the Settlement Claims Administrator to (1) provide verification to Class Counsel and Defendants' Counsel that it has distributed the Settlement Checks to Authorized Claimants, (2) retain copies of all of the endorsed Settlement Checks with releases, and (3) provide Defendants' Counsel with copies of the endorsed Settlement Checks in accordance with this Agreement and the Court's Final Approval Order.

**2.9.   Claim Form and Consent to Join.**

A.   Authorized Claimants will be issued a Settlement Check by the Settlement Claims Administrator for their share of the Net Settlement Fund in accordance with the Final Approval Order.

B.   Authorized Claimants are those Class Members who have timely and properly completed and returned on or before the Bar Date (i.e., within 45 days) a Claim Form and Release containing the following statement:

> **By signing this Claim Form and Release, I consent to join the FLSA collective action styled *Connors, et al. v. American Medical Response, Inc. and SeniorCare Emergency Medical Services, Inc., 20-CV-5046,* and release Defendants from all wage and hour claims under the Fair Labor Standards Act brought or which could have been brought in the Lawsuit, including, but not limited to, minimum wage and overtime claims for all time periods through [*date of preliminary court approval of settlement*], and expressly release such claims."**

Any modification or amendment of the above-language by the Authorized Claimant at Defendants' discretion may not be accepted and may void the Settlement Check.

C.   The Settlement Claims Administrator will mail the Settlement Checks to Authorized Claimants within thirty (30) days after the Final Effective Date.

D.   The Settlement Claims Administrator shall provide Defendants' Counsel with a signed copy of both sides of each Settlement Check that has been cashed.

**3.   SETTLEMENT TERMS.**

**3.1.   Settlement of Named Plaintiffs' Individual Claims.**

A.   In return for the payments specified in Section 3.1(B) (the "Individual Settlement Payments") the Named Plaintiffs agree to settle and release all of the claims they asserted in the Litigation and all claims that they could have

asserted against Defendants related to, or arising out of, their employment with Defendant SeniorCare up to the date of the Final Approval Order.

B. In return for their general releases of any and all claims they could have asserted against Defendants, SeniorCare will pay a total of $35,000.00 to Named Plaintiffs and their counsel as follows:

    a. $9,000.00 to Connors; and
    b. $14,333.33 to Rubio.

For clarity, the $23,333.33 paid to the Named Plaintiffs is in addition to the sums they will receive as Authorized Claimants and any Service Awards the Court may approve for the Named Plaintiffs. With respect to the Named Plaintiffs, Named Plaintiffs' counsel shall apply for $11,666.67 in attorneys' fees and costs, representing 1/3 of the Named Plaintiffs' $35,000 settlement for their individual claims.

**3.2.**    <u>**Class Settlement Amount**</u>.

A.    Defendants agree to pay One Hundred Twenty Five Thousand Dollars and No Cents ($ 125,000) which shall fully resolve and satisfy (1) any claim for Costs and Fees pertaining to the Class/Collective Settlement, and Service Awards, as approved by the Court, and (2) any and all amounts to be paid to all Authorized Claimants for releasing claims as set forth herein. Defendant SeniorCare's funding obligation under this Agreement shall not, under any circumstances, exceed the Maximum Settlement Amount.

B.    Defendant SeniorCare shall fund the Qualified Settlement Fund within Fifteen (15) days after the Final Approval Order provided, however, that the monies shall be returned to Defendant SeniorCare in the event of an appeal of the Final Approval Order. In the event of an appeal of the Final Approval Order, Defendant SeniorCare shall fund the Qualified Settlement Fund within ten (10) days after the Final Effective Date.

C.    The Claims Administrator shall issue the Settlement checks within 30 days from the Final Effective Date.

D.    Authorized Claimants will have ninety (90) days from the date of the mailing of the Settlement Checks to cash their Settlement Checks.

E.    The amount of any uncashed Settlement Checks shall revert to Defendant SeniorCare ninety-one (91) days after mailing. Such reversion payment shall be made to Defendant SeniorCare by the Settlement Claims Administrator. For purposes of this provision, the mailing date shall be deemed to be the date posted on the Settlement Checks.

DocuSign Envelope ID: 6672B2AD-B5E8-488F-938A-3135D9B22376

**3.3.** **Settlement Amounts Payable as Attorneys' Fees, Costs, and Expenses.**

**A.**   At the Fairness Hearing and in the Final Approval Motion, Class Counsel will petition the Court for no more than one-third of the Maximum Settlement Amount as an award of attorneys' fees. In addition, Class Counsel shall also seek reimbursement of reasonable litigation costs and expenses from the QSF. For settlement purposes only, Defendants shall not oppose such applications, or any appeal as to the denial of such applications. After depositing the funds set forth in Section 3.2(B) as provided for herein, Defendants shall have no additional liability for Class Counsel's attorneys' fees and costs.

**3.4.** **Service Awards and Costs.**

**A.**   In return for services rendered to the Class Members, at the Fairness Hearing, the Class Representatives will apply to the Court to receive up to a total of Four Thousand Dollars ($4,000) in Service Awards from the QSF as follows:

     (i)     Class Representative Connors, $2,000; and

     (ii)    Class Representative Rubio, $ 2,000;

For settlement purposes only, Defendants shall not oppose such application, or an appeal as to the denial of such application.

**B.**   The Class Representatives agree to the general release in Section 4.1(C) below and will execute this agreement, in consideration for receipt of the Service Award, if any, and the Class Representatives and Named Plaintiffs' respective shares of the QSF.

**C.**   In return for services rendered to the Class Members, the Settlement Claims Administrator shall receive a fee estimated not to exceed Five Thousand Dollars ($ 5,000) which shall be borne by the QSF. Defendants will not oppose such costs application.

**D.**   The outcome of the Court's ruling on the Settlement Claims Administrator's costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.

**3.5.** **Net Settlement Fund and Allocation to Authorized Claimants.**

**A.**   The allocation to Authorized Claimants for Settlement Checks will be made from the Net Settlement Fund.

**B.**   An Authorized Claimant's Individual Gross Amount from the Net Settlement Fund will be determined by the Settlement Claims Administrator as follows: The individual settlement allocation to Authorized Claimants shall be based on a formula that computes a

DocuSign Envelope ID: 6672B2AD-B5F8-488F-98A0-A135D9B22358

percentage of the Net Settlement Fund for each Authorized Claimant. More particularly, each Authorized Claimant's individual settlement shall be calculated by dividing their individual potential amount of recovery based on the number of hours each Authorized Claimant was assigned to the New York COVID deployment by the total potential alleged unpaid wage pool. Assuming full participation, once the percentage is computed, the Authorized Claimants will then be apportioned the same percentage of the Net Settlement Fund. For example, if an individual percentage of the potential unpaid wages pool is equal to 5%, then that Authorized Claimant would have the ability to submit a claim to receive 5% of the Net Settlement Fund. If there is less than full participation, meaning not all eligible Class Members submit a timely Claim Form and Release, the Authorized Claimants will have their percentages rescaled such that their percentages total 100% of the Net Settlement Fund. For example, if only three members (whose non-scaled percentages are 5%, 15% and 25%) timely submit a Claim Form and Release, making them Authorized Claimants, their respective shares of the Net Settlement Fund shall be scaled to 11.11%, 33.33% and 55.55%. Authorized Claimants whose individual apportionment would result in a payment of less than $50, will be apportioned a minimum award from the Net Settlement Amount in the amount of $50.

C.     Defendant SeniorCare and the Settlement Claims Administrator shall exchange such information as is necessary for the Settlement Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 3.6 below.

D.     The Settlement Claims Administrator shall mail to all Authorized Claimants their proportionate share of the Net Settlement Fund as set forth in this Agreement.

E.     All payments to Authorized Claimants made pursuant to this Agreement shall be deemed to be paid to such Authorized Claimants solely in the year in which such payments actually are received by the Authorized Claimant.

### 3.6.    **Tax Characterization**

A.     Settlement Checks paid to Authorized Claimants will be allocated 50% to W-2 wage payments and 50% to 1099 non-wage payments for interest, liquidated damages and statutory penalties. Any Service Awards will be considered 1099 non-wage income. All wage payments to Authorized Claimants shall be subject to applicable withholding taxes.

B.     The Settlement Claims Administrator is responsible for issuing and filing appropriate forms associated with payments of any amounts to Authorized Claimants, including, but not limited to, issuing the W-2 and 1099 Forms for all amounts paid to the Authorized Claimants that are cashed.

DocuSign Envelope ID: 6672B2AD-B5F8-488F-9B8A-2435D9B22379

4.    **RELEASE**

4.1.   **Release of Claims**.

    **A.**    By operation of the entry of the Final Approval Order, except as to such rights or claims as may be created by this Agreement, each individual Class Member who does not file an Opt-out Statement as set forth in this Agreement forever and fully releases American Medical Response, Inc., SeniorCare Emergency Medical Services, Inc., and all presently or formerly affiliated persons or entities including, but not limited to, any of AMR's or SeniorCare's present or former parent corporations, their owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers, reinsures, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and/or administrators, and all persons acting by, through, under or in concert with any of them ("Releasees"), from all wage and hour claims that could have been asserted under federal or state laws by and on behalf of the Class Members in the Lawsuit regarding the New York COVID deployment. The Released Claims include all claims under federal or New York State laws for minimum or overtime wages, unreimbursed expenses, spread of hours, any related wage and hour claims, all claims under NYLL for penalties, all related derivative benefit claims (both ERISA and non-ERISA benefits). Specifically, the Released Claims include any and all claims related to hours worked on the New York COVID deployment under the NYLL, Article 6, §192 (Cash payment of wages); §193 (Deductions from wages); §195 (Notice and record-keeping requirements); §198-c (Benefits or wage supplements); §198-d (Posting regulations on illegal wage deductions) and any claim under Article 19, § 605 et seq. of the NYLL for a claim of minimum wage or overtime and other provisions including the supporting state regulations and New York Minimum Wage Orders, 12 NYCRR §§ 146, et seq., provided however, Class Members are not waiving claims for alleged violation of NYLL §§ 191 and 198 with respect to frequency of pay. For those Class Members who file claims, the Released Claims further include any and all claims under the FLSA, 29 U.S.C.S. §§ 201 et seq. for minimum wage, overtime, unreimbursed expenses, and supporting federal regulations, interest on such claims, and attorneys' fees and costs related to such claims through the date this Settlement Agreement and Release is executed by all Parties.

    **B.**    Except as provided in this Agreement, Class Members and Class Counsel hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she or they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of the Class Members herein. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in the Lawsuit.

DocuSign Envelope ID: 6672B2AD-B5E8-488F-938A-9135D9B22375

C.    In addition to the waiver and release contained in Sections 4.1(A)-(B) above, and in consideration for the payment of the Individual Settlement Payments and the Service Award to the Class Representatives as set forth in Section 3.3(A), the Class Representatives, the Class Representatives' heirs, executors, administrators, successors and assigns, voluntarily release and forever discharge Releasees of and from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity, which they may have against Releasees as of the date of execution of this Agreement, whether known or unknown, asserted or unasserted, including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1991, Pub. L. No. 102-166, Sections 1981 through 1988 of Title 42 of the United States Code, 42 U.S.C. §§ 1981-1988; the Age Discrimination in Employment Act; the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq.; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; the Immigration Reform and Control Act, as amended; the Workers Adjustment Retraining Notification Act, as amended; the Family and Medical Leave Act; the New York City Administrative Code; the New York State Human Rights Law, New York Executive Law § 290 et seq.; the New York Civil Rights Law, New York Civil Rights Law § 1 et seq.; Article 6 of the New York Labor Law, New York Labor Law § 190 et seq.; the New York occupational safety and health laws; any claim arising under the common law; any other claim for employment discrimination, retaliation, wrongful termination, constructive discharge, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress; any claim for costs, fees, or other expenses, including attorneys' fees or any other action against Releasees, based upon any conduct occurring up to and including the date Named Plaintiffs execute this Agreement.

D.    Notwithstanding Section 4.1(A) or anything else to the contrary, other than Named Plaintiffs and Opt-In Plaintiffs, no Class Member will release any FLSA Claims if such Class Member does not become an Authorized Claimant.   To the extent a Class Member does not submit an Opt-out Statement as provided for in this Agreement, such Class Member shall be subject to the release set forth in Section 4.1(A), but shall not release any FLSA Claims.

**4.2.**    **Non-Admission of Liability & Confidentiality**.

A.    Defendants have agreed to the terms of this Agreement without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will avoid the further expense and disruption of Defendants' business due to the pendency and expense

17

Case 1:20-cv-05046-KHP   Document 31   Filed 04/19/21   Page 51 of 65
DocuSign Envelope ID: 6672B2AD-B5F8-488F-938A-8135D9B223F6
Case 1:20-cv-05046-KHP   Document 28-1   Filed 03/05/21   Page 18 of 22

of litigation. Nothing in this Agreement shall be deemed or used as an admission of liability by Defendants or as an admission that a class should be certified for any purpose other than settlement purposes.

B.   Named Plaintiffs and Class Counsel agree that the terms of the settlement will be kept confidential up until the filing of the Preliminary Approval Motion. Named Plaintiffs and Class Counsel agree and understand that, even following the date of the filing of the Preliminary Approval Motion, they will not publicize the terms of this Settlement Agreement and Release to any member of the media and will not post or permit another, including Class Counsel, to post the terms and conditions of the settlement on any social media (including Facebook, Instagram, Snapchat, Law 360 or any other media outlets or websites). Named Plaintiffs further agree not to make disparaging comments related to Defendants except as may be required by law or protected by law.

5.   **INTERPRETATION AND ENFORCEMENT.**

5.1.   **Cooperation Between the Parties; Further Acts**. The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

5.2.   **No Assignment**. Class Counsel and Named Plaintiffs, on their own behalf and on behalf of the Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit, or any related action.

5.3.   **Entire Agreement**. This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the parties shall be deemed merged into this Agreement.

5.4.   **Binding Effect**. This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiffs, Opt-In Plaintiffs, and all Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

5.5.   **Arms' Length Transaction; Materiality of Terms**. The Parties have negotiated all the terms and conditions of this Agreement at arms' length, including participating in a private mediation session. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

DocuSign Envelope ID: 6672B2AD-B5E8-488F-980A-8135D9B22378

**5.6.**   **Captions**.   The captions or headings of the Sections and Paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**5.7.**   **Construction**.   The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.   Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**5.8.**   **Severability**.   If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

**5.9.**   **Governing Law**.   This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**5.10.**   **Continuing Jurisdiction**.   The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.   The Court shall not have jurisdiction or authority to modify the terms of the Agreement or to increase Defendants' payment obligations hereunder.

**5.11.**   **Waivers, etc. to Be in Writing**.   No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.   Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**5.12.**   **When Agreement Becomes Effective; Counterparts**.   This Agreement shall become effective upon its execution.   The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**5.13.**   **Signatures**.   This Agreement is valid and binding if, and only if, it is signed by the authorized representatives of the Defendants and Named Plaintiffs.

**5.14.**   **Facsimile and Email Signatures**.   Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed

DocuSign Envelope ID: 6672B2AD-B5E8-488F-93A1-A135D8B2237B

an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email

**HAVING ELECTED TO EXECUTE THIS AGREEMENT AND TO FULFILL THE PROMISES SET FORTH HEREIN AND TO RECEIVE THEREBY THE SETTLEMENT SUMS AND OTHER CONSIDERATION IN SECTION "3" AND OTHER VOLUNTARY BENEFITS SET FORTH IN THIS AGREEMENT, THE NAMED PLAINTIFFS FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION AND CONSULTATION WITH ATTORNEYS, ENTER INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS THEY HAVE OR MIGHT HAVE AS SET FORTH IN THIS AGREEMENT AGAINST RELEASEES.**

**I AGREE TO THESE TERMS.**

*NAMED PLAINTIFF AND CLASS*
*REPRESENTATIVE JOSEPH CONNORS*

Joseph Connors

Dated: 03/01/2021

*NAMED PLAINTIFF AND CLASS*
*REPRESENTATIVE JOSE LUNA RUBIO*

Jose Luna Rubio

Dated: 03/02/2021

*DEFENDANT SENIORCARE EMERGENCY*
*MEDICAL SERVICES, INC.*

By: _____
    Michael Vatch, Chief Executive Officer

Dated:_____

*DEFENDANT AMERICAN MEDICAL*
*RESPONSE, INC.*

_____
[TBD]

Dated: _____

4850-3144-4957, v. 2

21

**I AGREE TO THESE TERMS.**

*NAMED PLAINTIFF AND CLASS*
*REPRESENTATIVE JOSEPH CONNORS*

_____
Joseph Connors

Dated: _____

*NAMED PLAINTIFF AND CLASS*
*REPRESENTATIVE JOSE LUNA RUBIO*

_____
Jose Luna Rubio

Dated: _____

*DEFENDANT SENIORCARE EMERGENCY*
*MEDICAL SERVICES, INC.*

By: _____
Michael Vatch, Chief Executive Officer

Dated:_____

*DEFENDANT AMERICAN MEDICAL*
*RESPONSE, INC.*

*Scott Rowrkamp*
[TBD]

Dated: _____3/4/2021_____

4850-3144-4957, v. 2

21

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

JOSEPH CONNORS and JOSE LUNA RUBIO,
individually and on behalf of all others similarly
situated,

               Plaintiffs,

               v.

AMERICAN MEDICAL RESPONSE and
SENIORCARE EMERGENCY MEDICAL
SERVICES, INC.,

               Defendants.

Case No.: 20-cv-5046

**NOTICE OF PROPOSED
SETTLEMENT OF CLASS
ACTION AND COLLECTIVE
ACTION LAWSUIT**

--------------------------------------------------------x

TO:        Any individual who worked as an Emergency Medical Technician or Paramedic
in connection with a deployment in New York in response to the COVID-19
pandemic during the period beginning March 29, 2020 and continuing through
May 30, 2020. ("Class Members")

DATED:     [TBD]

### PLEASE READ THIS NOTICE CAREFULLY

**This Notice relates to a proposed settlement of this Class Action Lawsuit. This Notice has
been reviewed and authorized by a U.S. Magistrate Judge (the "Judge"). It contains
important information as to your right to participate in the Class Settlement, make a claim
for payment or elect not to be included in the Class.**

### Introduction

Plaintiffs JOSEPH CONNORS and JOSE LUNA RUBIO (collectively, "Plaintiffs") commenced a
federal lawsuit captioned Case No. 20-CV-5046 (AJN)(KHP) (the "Lawsuit") seeking to recover
alleged unpaid wages on behalf of themselves and similarly situated Emergency Medical
Technicians ("EMTs") and Paramedics against American Medical Response, Inc. ("AMR") and
SeniorCare Emergency Medical Services, Inc. ("SeniorCare") (collectively, "Defendants"). In the
Lawsuit, Plaintiffs sought recovery for, among other things, Defendants' alleged failure to pay
them and other similarly situated EMTs and Paramedics overtime premiums in violation of the Fair
Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Defendants deny these
allegations and they denied any liability.

1

However, Plaintiffs and Defendants have agreed to settle the Lawsuit subject to the approval of the Judge. Defendants have agreed to a settlement fund in the amount of One Hundred Twenty Five Thousand dollars ($125,000.00), which will be used to pay all claims against the fund, as well as to pay attorneys' fees and costs.

Magistrate Judge Katharine H. Parker is presiding over this Lawsuit. The Lawsuit is known as *Connors, et al. v. American Medical Response, Inc. and SeniorCare Emergency Medical Services, Inc.* Case No. 20-CV-5046 (AJN)(KHP), and it is filed in the United States District Court for the Southern District of New York, 500 Pearl Street, New York, NY 10007.

The Judge has not decided who is right and who is wrong. Your legal rights may be affected and you have a choice to make now. These rights and options are summarized below and explained in detail throughout this Notice.

Defendants vigorously deny Plaintiffs' allegations and contend that the Class Members at all times were paid correctly, and are therefore not entitled to any additional wages and damages beyond the amounts of money they already have been paid for working in connection with a deployment in New York in response to the COVID-19 pandemic during the period beginning March 29, 2020 and continuing through May 30, 2020 (the "New York COVID deployment").

## YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT:

| | |
|---|---|
| **PARTICIPATE** | As described more fully below, to participate in the Class Settlement you must send a properly completed Claim Form and Release to the Claims Administrator that must be postmarked/emailed by [date]. If you fail to mail/email a timely Claim Form and Release, you will not receive your full allocated share of this Class Settlement, as described in Question 12, below. |
| **DO NOTHING** | You may also do nothing in response to this Class Settlement Notice. As described in Question 12 below, this requires no further action on your part. However, if you do nothing, then your right to pursue a Wage Claim under the state law will be waived once the Court approves the class settlement. Any potential claim you may have under the FLSA, however, will not be affected if you do nothing in response to this Notice. |
| **OBJECT** | You may also object to the Class Settlement by writing to the Judge about why you believe the Class Settlement is unfair or unreasonable. If the Judge rejects your objection, you will still be bound by the terms of the Class Settlement. As explained below, if you do not wish to be bound by the settlement, you may opt-out to exclude yourself from the settlement. You will not be bound by the settlement if you exclude yourself from this class settlement. You may not object if you elect to opt-out. If you object you may appear at the Fairness Hearing to speak to the Judge about the fairness of the Class Settlement. |
| **EXCLUDE YOURSELF ("OPT-OUT")** | If you wish to exclude yourself ("opt-out") from the Class Settlement you must follow the directions outlined in response to Question 9 below. |

## FREQUENTLY ASKED QUESTIONS

### Question 1.   Why did I receive this notice?

You received this notice because SeniorCare's records show that you performed work as an EMT or Paramedic in connection with a deployment in New York in response to the COVID-19 pandemic during the period beginning March 29, 2020 and continuing through May 30, 2020 (the "New York COVID deployment").

### Question 2.   What are the Fair Labor Standards Act and New York Labor Law?

The Fair Labor Standards Act, 29 U.S.C §201 et. seq. ("FLSA") is a federal law concerning payment of wages by businesses to employees. This law provides minimum wage and overtime protections for certain classes of employees. Similarly, the New York Labor Law ("NYLL"), which has many different parts, sets forth the method in which businesses must pay employees, the types of notices employers must provide employees, and potential penalties for an employer's failure to comply with the law.

### Question 3.   Why was this lawsuit filed?

The Plaintiffs alleged that the Defendants did not comply with the FLSA and NYLL by failing to properly pay overtime for all hours worked during the New York COVID deployment.  The main allegation in this case is that the Defendants did not pay overtime premiums for all compensable time during the New York COVID deployment.  Defendants maintain, in response to Plaintiffs' claims, that Plaintiffs (and the Class Members) were properly paid for all time worked on the New York COVID deployment.

### Question 4.   Why is there a settlement?

Class Counsel, identified in Question 5 below, analyzed and evaluated the merits of the claims made against Defendants.  Based upon Class Counsel's investigation and due diligence, as well as their review of documents and information pertaining to wages paid to Plaintiffs and Class Members, and the substantial risks of a continued litigation, including the possibility that the class action would not be certified by the Judge, if not settled now, might not result in any recovery whatsoever, or might result in a recovery that is less favorable and that would not occur for several years: Plaintiffs, Class Counsel, and Defendants entered into a Class Settlement Agreement and Release ("Class Settlement").  In light of these risks, Class Counsel is satisfied that the terms and conditions of the Class Settlement are fair, reasonable and adequate, and that the Class Settlement is in the best interest of Plaintiffs and Class Members.

### Question 5.   Do I have a lawyer in this case?

The Moser Law Firm, P.C., has been designated as legal counsel to represent you and other Class Members. Paul Pagano, of the Moser Law Firm, may be contacted at 5 East Main Street, Huntington, NY 11743, (516) 671-1150 or at paul.pagano@moserlawfirm.com. You can ask for Paul Pagano, Esq. He is Class Counsel. You will not be charged separately for contacting this lawyer. You will not be charged for calling, emailing or speaking confidentially to Class Counsel. You are permitted to call Class Counsel with any questions about the settlement or participating in it. Class Counsel's fees are being paid from the total settlement fund as part of the Settlement and are subject to the approval of the Judge. If you want to be represented by your own lawyer, you may hire one at your own expense.

3

**Question 6.   How are settlement amounts calculated?**

Class Members who submit a properly completed Claim Form and Release as described in Question 8 below, will receive their share of the Net Settlement Fund, as defined in the Class Settlement, according to the allocation formula set forth in Section 3.5(B) of the Class Settlement and summarized below.

A Class Member's portion of the settlement award ("Individual Settlement Allocation") shall be determined by the Claims Administrator. The Individual Settlement Allocation to Class Members is based on a formula that computes a percentage of the Net Settlement Fund for each potential class member. To determine each Class Member's share of the Net Settlement Fund, the Parties analyzed hours that each Class member was assigned to the New York COVID deployment. A percentage of this total pool of potential alleged unpaid wages was computed for each Class Member by dividing their individual potential amount by the total potential alleged unpaid wage pool. Assuming full participation, once the percentage is computed, that individual Class Member will then be apportioned the same percentage of the Net Settlement Fund. For example, if an individual percentage of the potential unpaid wages pool is equal to 5%, then that person would have the ability to submit a claim to receive 5% of the Net Settlement Fund. If there is less than full participation, meaning not all eligible Class Members submit a timely Claim Form and Release, the individual Class Members who timely submit a Claim Form and Release will have their percentages rescaled such that all individuals who have submitted a timely Claim Form and Release total 100% of the Net Settlement Fund. For example, if only three members (whose non-scaled percentages are 5%, 15% and 25%) timely submit a Claim Form and Release their respective shares of the Net Settlement Fund shall be scaled to 11.11%, 33.33% and 55.55% (subject to SeniorCare's right to withdraw from the settlement if more than 10% of Class members opt-out). Class members whose individual apportionment would result in a payment of less than $50, will be apportioned a minimum award from the Net Settlement Amount in the amount of $50.

The full Individual Settlement Allocation will only to be distributed and paid to a Class Member who submits a timely Claim Form and Release.

If you have questions regarding your apportionment from the Net Settlement Amount as identified on the Claim Form and Release, you may contact the Claims Administrator for additional information regarding your Individual Settlement Allocation.

**Question 7.   Who brought this action and are they being compensated?**

This Lawsuit was brought by the named Plaintiffs. The named Plaintiffs, Joseph Connors ("Connors") and Jose Luna Rubio ("Rubio"), took lead roles in bringing this Lawsuit and assisted in its resolution. In addition to their allocated share as described in Question 6, Plaintiffs Connors and Rubio will each request a service award that is traditionally given to class representatives in recognition of their respective efforts and the time and energy expended on behalf of themselves and Class Members in reaching this Settlement. Named Plaintiffs Connors and Rubio are receiving an additional payment for releasing individual claims that are not being released by Class Members.

**Question 8.   What do I have to do to be included in the Settlement?**

To be eligible for a full Individual Settlement Allocation from the settlement fund, you must timely complete and return the enclosed Claim Form and Release according to the instructions provided on the form. The Claim Form and Release must be personally filled out by the Class Member who seeks to participate in the Class Settlement or someone with a legal right to act on his or her behalf.

The Claim Form and Release must be properly completed, signed, and mailed/emailed to the Settlement Claims Administrator by [TBD] (the "Claim Bar Date"). If you do not properly complete and timely submit

the Claim Form and Release, you will not be eligible to receive your full Individual Settlement Allocation.

**You should keep in mind that if you do not timely opt-out, and if you do not properly and timely complete and return the Claim Form and Release by the Claim Bar Date, you will not be entitled to receive the full amount allocated to you from the Net Settlement Fund, but you will still be bound by the Release of all claims as described below.**

If you timely return the enclosed Claim Form and Release to the Settlement Claims Administrator so that it is received via mail and postmarked or emailed by [TBD], the Settlement Claims Administrator will make your payment after a Fairness Hearing as instructed by the Judge.

Additionally, if the Judge grants final approval of the Class Settlement, this Lawsuit will be dismissed and Class Members who do not exclude themselves will fully release and discharge Defendants through the date of Final Approval consistent with the terms of the Class Settlement. This means that you cannot sue, continue to sue, or be party to any other lawsuit or arbitration against Defendants regarding the claims that are being released herein, i.e. all wage and hour claims under the NYLL regarding the New York COVID deployment. It also means that all of the Judge's Orders will apply to you and legally bind you. In addition, by signing the Claim Form and Release, you forever and fully release Defendants through the Final Approval, from all FLSA claims asserted in this Lawsuit.

## Question 9.   How do I exclude myself from the Settlement?

If you do not want a payment from the Class Settlement, but you want to keep the right to separately, on your own, sue or continue to sue Defendants about the legal issues in this case, or which could have been brought in this case, then you must take additional steps to exclude yourself from this case.

If you intend to exclude yourself, you must mail a written, signed statement ("Opt-out Statement") to the Settlement Claims Administrator stating "I opt out from the settlement in *"Connors, et al. v. American Medical Response, Inc. and SeniorCare Emergency Medical Services, Inc.*" To be valid, you must also include your name, job title, address, and telephone number on the Opt-out Statement. To be effective, the Opt-out Statement must be mailed, via First Class United States mail, to the Settlement Claims Administrator and postmarked by [TBD]:

**Analytics Consulting LLC**

**PO Box 2006**

**Chanhassen MN 55317-2006**

If you exclude yourself from the Class Settlement, you will NOT be allowed to object to the Settlement as described in Question 14.

## Question 10.  What am I giving up by staying in the case?

Unless you exclude yourself, you will remain a Class Member. That means you cannot sue, continue to sue, or be a party to any other lawsuit or arbitration against Defendants for claims being released as part of this settlement. If you have a pending lawsuit or arbitration against Defendants, speak to your lawyer in that case immediately to see if the Settlement will affect your other case. Remember, the exclusion deadline is [TBD].

## Question 11.  If I exclude myself, can I get money from the Settlement?

No. If you exclude yourself, you will not receive any money from this Settlement.

## Question 12.   What happens if I do nothing?

If you do nothing, you will be subject to all decisions and rulings by the Judge, and all of your Wage Claims will be relinquished if the Judge approves the Settlement.

## Question 13. How will Class Counsel be paid?

Class Counsel will ask the Judge to approve attorneys' fees and costs not to exceed Forty One Thousand Six Hundred Sixty Six Dollars and Sixty Seven ($41,666.67), which represents Thirty Three and One Third Percent (33.33%) of the $125,000 class settlement fund plus an additional $400 for the costs expended on the Lawsuit. The fees would pay Class Counsel for all work that they have performed in this Lawsuit including preparing the Complaint, engaging in discovery, investigating the facts, participating in private mediation, and negotiating and overseeing the settlement.  Class Counsel will also ask the Judge to approve attorneys' fees in the amount of $11,666.67 with respect to the named Plaintiffs individual claims.

## Question 14.   How do I tell the Judge that I do not like the Settlement?

You can object to the settlement if you do not like any part of it. You can give reasons why you think the Judge should not approve it. The Judge will consider your views. However, if the Judge rejects your objection, you will still be bound by the terms of the Settlement. To object, you must send a letter stating that you object to the Settlement. Your statement must include reasons for the objection and any supporting documentation in your possession. Your statement must also include your name, job title, address, and telephone number. The written objection must also contain the words, "I object to the settlement in "*Connors, et al. v. American Medical Response, Inc. and SeniorCare Emergency Medical Services, Inc.*" Failure to include these words renders the objection invalid.

If you wish to present your objection at the Fairness Hearing described below, you must state your intention to do so in your written objection. Your statement should be as detailed as possible; otherwise the Judge may not allow you to present reasons for your objection at the Fairness Hearing that you did not describe in your written objection. Your objection will not be heard unless it is postmarked by [TBD] and mailed, via First-Class United States mail, to the Settlement Claims Administrator at:

**Analytics Consulting LLC**

**PO Box 2006**

**Chanhassen MN 55317-2006**

The Settlement Claims Administrator will share your objection with Class Counsel and Defendants' counsel and file your objection statement with the Judge.

You may not object to the Settlement if you submit a letter requesting to exclude yourself or opt-out of the Settlement, as described in Question 9 above.

## Question 15.   What's the difference between objecting and excluding?

Objecting is simply telling the Judge that you do not like something about the Settlement. You can object only if you stay in the Settlement. Excluding yourself from the Settlement is telling the Judge that you do not want to be part of the Settlement. If you exclude yourself, you have no basis to object because the case no

longer affects you.

## Question 16. When and where will the Judge decide whether to approve the Settlement?

The Honorable Katharine H. Parker, United States Magistrate Judge, will hold a Fairness Hearing at:

**[TBD]**

**On [date and time].**

At the Fairness Hearing, the Judge will consider whether the terms of the Settlement are fair, reasonable, and adequate. If there are objections, the Judge will consider them. The Judge will listen to people who have asked to speak at the hearing. Typically, at the Fairness Hearing, the Judge will decide whether to approve the settlement. Other times, the Judge may consider the materials separately after the Fairness Hearing. We do not know how long these decisions will take.

## Question 17.  Are there more details about the Settlement?

This Notice summarizes the proposed Class Settlement. More details are in the Class Settlement agreement. You can review the Class Settlement by asking for a copy of the Class Settlement by writing to or emailing

**Analytics Consulting LLC**
**PO Box 2006**
**Chanhassen MN 55317-2006**
**SeniorCareSettlement@noticeadministrator.com**

4814-8778-2365, v. 2

CLAIM FORM & RELEASE

Connors v. American Medical Response, Inc.,
Civil Action No. 20-CV-5046
United States District Court for the Eastern District of New York

In order to participate in the settlement (and receive a payment) that is described in the Notice of Proposed Settlement of Class Action and Collective Action Lawsuit that accompanies this form, you must complete and submit this claim form by mail or e-mail to the following address. All class members who submit claim forms by _____, 2021, will receive their settlement payments approximately in mid/late 2021, assuming a timely court approval of the settlement.

Analytics Consulting LLC
PO Box 2006
Chanhassen, MN 55317-2006
SeniorCareSettlement@noticeadministrator.com
FAX:

Contact Information (please print clearly):

Name: _____

Home Address: _____

Home or Mobile Number: _____

Email Address: _____

TO QUALIFY FOR A SHARE OF THE SETTLEMENT AND RECEIVE A PAYMENT, YOU MUST SIGN AND DATE BOTH THIS FORM AND THE ACCOMPANYING RELEASE AND RETURN BOTH BY MAIL OR EMAIL AS SET FORTH ABOVE.

I have reviewed the Notice of Proposed Settlement of Class Action and Collective Action Lawsuit and this form, and I consent to opt in and join this action and have the Named Plaintiffs and their counsel represent me in this action pursuant to 29 U.S.C. § 216(b).


_____               _____
Signature                             Date

RELEASE

By signing this Claim Form and Release, I consent to join the FLSA collective action styled *Connors, et al. v. American Medical Response, Inc. and SeniorCare Emergency Medical Services, Inc., 20-cv-5046,* and release Defendants from all wage and hour claims under the Fair Labor Standards Act brought or which could have been brought in the Lawsuit, including, but not limited to, minimum wage and overtime claims for all time periods through [*date of preliminary court approval of settlement*], and expressly release such claims.

_____
Signature

_____
Date

2