**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

JOSEPH CONNORS and JOSE LUNA RUBIO,
individually and on behalf of all others similarly
situated,

                Plaintiffs,

                v.                         Case No.: 20-cv-5046

AMERICAN MEDICAL RESPONSE, INC. and
SENIORCARE EMERGENCY MEDICAL
SERVICES, INC.,

                Defendants.

---------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL**
**APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

**Paul A. Pagano**
**Moser Law Firm, P.C.**
**5 East Main Street**
**Huntington, New York**
**(516) 671-1150**
**paul.pagano@moserlawfirm.com**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................... ii

Preliminary Statement ............................................................................................. 1

Background Facts ..................................................................................................... 3

Summary of the Settlement Terms ........................................................................... 5

ARGUMENT ............................................................................................................ 8

I.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED IN ALL RESPECTS. ....................................................... 8

II.   APPROVAL OF THE FLSA SETTLEMENT IS APPROPRIATE UNDER ................ 14

FEDERAL LAW .................................................................................................... 14

III. PLAINTIFFS CONNORS AND RUBIO SHOULD BE GIVEN SERVICE AWARDS ....... 14

IV. PLAINTIFFS' COUNSEL'S REQUEST FOR ATTORNEYS' FEES SHOULD BE APPROVED ............................................................................................................ 15

CONCLUSION ........................................................................................................ 17

## TABLE OF AUTHORITIES

**CASES**

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001) ...............................14

*Ballinger v. Advance Mag. Publishers, Inc.*, No. 13 Civ. 4036, 2014 WL 7495092 (S.D.N.Y. Dec. 29, 2014)........................................................................................................................13

*Burns v. Falconstor Software, Inc.*, No. 10 CV 4632 (ERK), 2014 U.S. Dist. LEXIS 203061 (E.D.N.Y. Apr. 10, 2014) ............................................................................................................17

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) .................................... Passim

*D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) .................................................................8

*Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, No. 04 Civ. 2295, 2009 U.S. Dist. LEXIS 77489 (S.D.N.Y. 2009)........................................................................................................7, 14

*Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290 (E.D.N.Y. 2015) ............10

*Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005)..................................................13

*Goldberger v. Integrated Res.*, 209 F.3d 43 (2d Cir. 2000) ........................................................15

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Nos. 05 Civ. 10240, *et al.*, 2007 WL 2230177 (S.D.N.Y. July 27, 2007). .........................................................................................9

*In re Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) ...................................................11, 12

*In re Ira Haupt & Co.*, 304 F. Supp. 917 (S.D.N.Y. 1969).........................................................11

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008) ..........................................16, 17

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ..........................................11

*Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)...............12

*Kochilas v. Nat'l Merch. Servs., Inc.*, No. 14 Civ. 00311, 2015 WL 5821631 (E.D.N.Y. Oct. 2, 2015) ..........................................................................................................................................8

*Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906, 2014 WL 4996248 (S.D.N.Y. Oct. 7, 2014). ...14

*McKenna v. Champion Int'l Corp.*, 747 F.2d 1211 (8th Cir. 1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989)...................................................14

*Michael Milken and Assoc. Sec. Lit.*, 150 F.R.D. 57 (S.D.N.Y. 1993) .......................................13

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) ..........................................................................13

*Pearlman v. Cablevision Sys. Corp.*, No. CV 10-4992 (JS) (AKT), 2019 U.S. Dist. LEXIS 142222 (E.D.N.Y. Aug. 20, 2019)..................................................................................15, 17

*Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ................................................................................................................................................11

*Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ................................................................................................................................................8

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005); ............................... Passim

*Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir. 2006) ...................................................10

**<u>Preliminary Statement</u>**

Plaintiffs Joseph Connors and Jose Luna Rubio (collectively "Plaintiffs") submit this Memorandum of Law in support of their Motion for Final Approval of the Class and Collective Action Settlement.

On April 21, 2021, this Court took the first step in the settlement approval process by: (1) preliminarily approving the Settlement Agreement; (2) preliminarily certifying the settlement class; (3) approving and authorizing distribution of the class notice and claim form; (4) setting a date for the final fairness hearing of August 24, 2021 at 11:00 a.m.; (5) approving the class action settlement procedure; (6) appointing Moser Law Firm, P.C. as class counsel; and (6) approving the proposed schedule for final settlement approval. *See* ECF No. 32 (Preliminary Approval Order). Notably, *none* of the twenty-four potential Class Members have opted out or objected. Instead, twelve of the twenty-four Class Members have returned claim forms, which, when added to the 2 named Plaintiffs, totals 14 Class Members who have consented to the settlement.

For the reasons set forth below, the parties respectfully request that the Court issue a final approval order ("Final Approval Order"): (1) certifying the following settlement class under Fed R. Civ. P. 23(a), b(1) and b(3): all individuals who performed work as Emergency Medical Technicians or Paramedics in connection with a deployment in New York in response to the COVID-19 pandemic during the period beginning March 29, 2020 and continuing through May 30, 2020; (2) approving the settlement and Settlement Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely filed an opt-out statement: (3) ordering Defendant to fund the Qualified Settlement Fund within 15 days of the Final Approval Order; (4) ordering the Settlement Claims Administrator to distribute Settlement Checks to the named

Plaintiffs from the Qualified Settlement Fund for the individual Plaintiffs' Frequency Claims within 30 days of the Final Approval Order; (5) approving the Service Awards to be paid to the Class Representatives and ordering the Settlement Claims Administrator to pay same from the Qualified Settlement Fund within 30 days of the Final Approval Order; (6) approving Plaintiffs' counsel's request for attorneys' fees and costs and ordering the Settlement Claims Administrator to pay from the Qualified Settlement Fund the attorneys' fees and costs to be paid to Class Counsel within 30 days of the Final Approval Order; (7) approving the $5,000 payment to the Settlement Claims Administrator and authorizing same to pay itself from the Qualified Settlement Fund within 30 days of the Final Approval Order; (8) ordering the Settlement Claims Administrator to distribute Settlement Checks to the named Plaintiffs and Authorized Claimants from the Net Settlement Fund for the class claims within 30 days of the Final Approval Order; (9) ordering the dismissal with prejudice of all claims asserted in the Lawsuit by the named Plaintiffs and the unpaid overtime and notice claims of all Class Members who did not timely file an opt-out statement; (10) retaining jurisdiction over the litigation as necessary for the purpose of filing consent-to-join forms from the Authorized Claimants as set forth in their Settlement Checks and other relief; and (11) ordering that the Settlement Claims Administrator: (i) provide verification to Class Counsel and Defendants' counsel that it has distributed the settlement checks to authorized claimants; (ii) retain copies of all the endorsed settlement checks with releases; and (iii) provide Defendants' Counsel with copies of the endorsed Settlement Checks.

**Background Facts**

## I.    **The Parties.**

Plaintiff Connors was employed by Defendant SeniorCare Emergency Medical Services, Inc. ("SeniorCare") as an EMT from October 2019 until July 15, 2020. Plaintiff Rubio has been employed by SeniorCare since June 2019. SeniorCare assigned its employees, including the Named Plaintiffs, to the New York COVID deployment pursuant to a contract with Defendant American Medical Response, Inc. ("AMR").

## II.    **The Alleged Claims In The Lawsuit.**

Plaintiffs' complaint ("the Complaint") asserts the following claims: (1) SeniorCare violated the NYLL because it paid the Named Plaintiffs and the "SeniorCare Frequency Class" in violation of NYLL § 191(1)(a) (Count I); (2) SeniorCare violated the NYLL because it did not provide the Named Plaintiffs and the "SeniorCare Notice Class" with the hiring notices required by NYLL § 195(1) (Count II); (3) Defendants failed to properly compensate the Named Plaintiffs and the "Deployment Overtime Class" for overtime in violation of the NYLL (Count III); (4) Defendants failed to include meal stipends in the regular rate used to calculate overtime premiums for the Named Plaintiffs and "Meal Stipend Class" in violation of the NYLL (Count IV); (5) Defendants failed to properly compensate the Named Plaintiffs and "FLSA Overtime Collective" for overtime in violation of the FLSA (Count V); (6) Defendants failed to include meal stipends in the regular rate used to calculate overtime premiums for the Named Plaintiffs and "Meal Stipend Collective" in violation of the FLSA (Count VI); and (7) Defendants violated the NYLL because they did not pay the Named Plaintiffs and members of the "Deployment Frequency Class" in accordance with NYLL § 191(1)(a)  (Count VII).

### III.     Procedural History.

Plaintiffs filed their Complaint on July 1, 2020.  Pagano Dec., Exhibit 1. Defendants answered on September 14, 2020.  The Court referred the case to mediation on October 2, 2020.  On December 15, 2020, the parties held a mediation session with Robert Kheel, Esq. On February 1, 2021, the parties reached an agreement in principle to settle the litigation.  In early March 2021 the parties executed the Settlement Agreement.   On April 9, 2021, Plaintiffs filed their motion for preliminary approval of the Settlement Agreement.  Pagano Dec., Exhibit 2.  On April 21, 2021, this Court took the first step in the settlement approval process by: (1) preliminarily approving the Settlement Agreement; (2) preliminarily certifying the settlement class; (3) approving and authorizing distribution of the class notice and claim form; (4) setting a date for the final fairness hearing of August 24, 2021 at 11:00 a.m.; (5) approving the class action settlement procedure; (6) appointing Moser Law Firm, P.C. as class counsel; and (6) approving the proposed schedule for final settlement approval.

4

**Summary of the Settlement Terms**

## I.   The settlement fund.

The parties have agreed that Defendants will pay $160,000.00 to settle the instant litigation with said sum to be placed in a Qualified Settlement Fund.  $125,000 of the $160,000 will be paid to resolve the Wage Claims as defined in the Settlement Agreement.  The balance, $35,000, shall be paid to the Named Plaintiffs to resolve their individual claims including their Frequency Claims as defined in the Settlement Agreement.  This is not a *claims made* settlement but rather a common fund settlement.  The "Net Settlement Fund" as defined in the Settlement Agreement will be paid out to the Authorized Claimants who submitted a timely Claim Form and Release and the Named Plaintiffs who are deemed Authorized Claimants under the terms of the Settlement Agreement.  The Defendants are responsible for paying the regular employer portion of the employee payroll taxes in addition to the Qualified Settlement Fund.

## II.   Releasees and claims released.

**A.**   By operation of the entry of the Final Approval Order, except as to such rights or claims as may be created by the Settlement Agreement, each individual Class Member who did not file an Opt-out Statement as set forth in the Settlement Agreement will forever and fully release American Medical Response, Inc., SeniorCare Emergency Medical Services, Inc., and all presently or formerly affiliated persons or entities including, but not limited to, any of AMR's or SeniorCare's present or former parent corporations, their owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, insurers, reinsures, parents, subsidiaries, affiliates, benefit plans, plan fiduciaries, and/or administrators, and all persons acting by, through, under or in concert with any of them ("Releasees"), from all wage and hour claims that could have been asserted under federal or state laws by and on behalf of the Class Members in the Lawsuit regarding the New York COVID deployment as defined in the Settlement Agreement.  The Released Claims will include all claims under federal or New York State laws for minimum or overtime wages, unreimbursed expenses, spread of hours, any related wage and hour claims, all claims under NYLL for penalties, all related derivative benefit claims (both ERISA and non-ERISA benefits). Specifically, the Released Claims will include any and all claims related to hours worked on the New York COVID deployment under the NYLL, Article 6, §192 (Cash payment of wages); §193 (Deductions from wages); §195 (Notice and record-keeping requirements); §198-c (Benefits or wage supplements); §198-d (Posting regulations on illegal wage deductions) and any claim under Article 19, § 605 et seq. of the NYLL for a claim of minimum wage or overtime and other

5

provisions including the supporting state regulations and New York Minimum Wage Orders, 12 NYCRR §§ 146, et seq., provided however, Class Members are not waiving claims for alleged violation of NYLL §§ 191 and 198 with respect to frequency of pay.  For those Class Members who filed claims, the Released Claims will further include any and all claims under the FLSA, 29 U.S.C.S. §§ 201 et seq. for minimum wage, overtime, unreimbursed expenses, and supporting federal regulations, interest on such claims, and attorneys' fees and costs related to such claims through the date the Settlement Agreement was executed by all Parties.

    **B.**  In addition for the consideration set forth in the Settlement Agreement, the Named Plaintiffs and their executors, administrators, successors and assigns, will voluntarily release and forever discharge Releasees of and from any actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, judgments, obligations, union grievances, claims, charges, complaints, appeals and demands whatsoever, in law or equity, which they may have against Releasees as of the date of execution of the Settlement Agreement, whether known or unknown, asserted or unasserted, including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Civil Rights Act of 1991, Pub. L. No. 102-166, Sections 1981 through 1988 of Title 42 of the United States Code, 42 U.S.C. §§ 1981-1988; the Age Discrimination in Employment Act; the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq.; the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq.; the Immigration Reform and Control Act, as amended; the Workers Adjustment Retraining Notification Act, as amended; the Family and Medical Leave Act; the New York City Administrative Code; the New York State Human Rights Law, New York Executive Law § 290 et seq.; the New York Civil Rights Law, New York Civil Rights Law § 1 et seq.; Article 6 of the New York Labor Law, New York Labor Law § 190 et seq.; the New York occupational safety and health laws; any claim arising under the common law; any other claim for employment discrimination, retaliation, wrongful termination, constructive discharge, pain and suffering, mental anguish, intentional and/or negligent infliction of emotional distress; any claim for costs, fees, or other expenses, including attorneys' fees or any other action against Releasees, based upon any conduct occurring up to and including the date Named Plaintiffs executed the Settlement Agreement.

## III. **Eligible Employees**.

    The eligible employees are the Named Plaintiffs and Opt-In Plaintiffs as defined in the Settlement Agreement.

## IV. **Allocation Of Qualified Settlement Fund**

    In accordance with the Settlement Agreement, the Qualified Settlement Fund will be funded by Defendants in the amount of $160,000.  Of that $160,000,  $35,000 is earmarked for the named Plaintiffs' individual claims.  Subject to Court approval, that amount will be broken down as follows: (1) $9,000 for Joseph Connors; (2) $14,333.33 for Jose Luna Rubio; and (3) 1/3

of the $35,000 or $11,666.67 representing attorneys' fees and costs.  The remaining $125,000 is earmarked for the settlement of the class and collective claims.  Subject to Court approval, Class Counsel will be paid 1/3 of the $125,000 or $41,666.66 representing attorneys' fees and costs. Additionally, $5,000 will be paid to Analytics Consulting LLC, the Settlement Claims Administrator for the litigation.[1]  Finally, named Plaintiffs seek a total of $4,000 ($2,000 each) as service awards.  The named Plaintiffs were instrumental in drafting the complaint, preparing discovery demands and responding to same, participating in mediation and obtaining a favorable result for the Class Members.  They have also shouldered the inherent risks of being named Plaintiffs in a class action lawsuit. Service Awards of this type are commonly awarded in complex wage and hour litigation. *See Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, No. 04 Civ. 2295, 2009 U.S. Dist. LEXIS 77489, at *10 (S.D.N.Y. 2009) ("Such service awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff.").  Taking into account the foregoing leaves $74,333.33 of the $125,000 to be distributed amongst the 12 opt ins and 2 named Plaintiffs for the Class claims.  The $74,333.33 will be allocated to the 14 class members according to the number of hours they spent on the New York COVID Deployment.  The breakdown by class member is attached to the Pagano Declaration as Exhibit 5.

## V.    Settlement payment schedule.

Defendants will fund the $160,000 Qualified Settlement Fund by making a single lump sum payment within 15 days after the Final Approval Order issued by the Court following the fairness hearing.

---

[1] Pagano Dec., Exhibit 3.

**ARGUMENT**

**I.**     **THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE
AND SHOULD BE APPROVED IN ALL RESPECTS.**

Rule 23(e) requires court approval for a class action settlement to ensure that it is

procedurally and substantively fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e).

"Approval of a class action settlement is within the Court's discretion, which should be exercised

in light of the general judicial policy favoring settlement." *Tiro v. Pub. House Invs., LLC*, Nos. 11

Civ. 7679, 11 Civ. 8249, 2013 WL 4830949, at *4 (S.D.N.Y. Sept. 10, 2013) (internal quotation

marks omitted).  To determine procedural fairness, courts examine the negotiating process leading

to the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005);

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). To determine substantive fairness,

courts determine whether the settlement's terms are fair, adequate, and reasonable according to the

factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated

on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Courts examine procedural and substantive fairness in light of the "strong judicial

policy" favoring class action settlements. *Wal-Mart Stores*, 396 F.3d at 116; *see also Spann v.

AOL Time Warner, Inc.*, No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005)

("[P]ublic policy favors settlement, especially in the case of class actions.").

**A.**     **The Settlement is Procedurally Fair.**

A "presumption of fairness, adequacy, and reasonableness may attach to a class

settlement reached in arm's-length negotiations between experienced, capable counsel after

meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting Manual for Complex

Litigation, (Third) § 30.42 (1995)); *see also Kochilas v. Nat'l Merch. Servs., Inc.*, No. 14 Civ.

00311, 2015 WL 5821631, at *3 (E.D.N.Y. Oct. 2, 2015) (same). "Absent fraud or collusion,

[courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, Nos. 05 Civ. 10240, *et al.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

In this case, the parties, who were represented by competent and experienced counsel, participated in extensive arm's-length negotiations over many months, including participating in mediation. The parties also engaged in sufficient discovery to explore and evaluate the claims and defenses at issue. Further, prior to and during the negotiations Class Counsel analyzed SeniorCare's payroll data, gathered corporate records, analyzed information gleaned from its own investigation, and estimated damages figures for the Class.

>    **B.**    **The Settlement is Substantively Fair.**

In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement. 495 F.2d at 463. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Id.* Eight of the nine *Grinnell* factors weigh in favor of final approval of the Settlement Agreement, and the remaining factor is neutral.[2]

---

[2] The only factor not explicitly analyzed below is the ability of the Defendants to withstand a greater judgment, but said factor is irrelevant in light of, *inter alia*, the substantial nature of Plaintiffs and the class/collective members' recovery.

1.      **Litigation Through Trial Would be Complex, Costly, and Long
        (_Grinnell_ Factor 1).**

As set forth above, the instant complaint contains 7 causes of action covering both state

and federal law and concerns five potential classes and two potential collectives.  There are also

potential issues of federal pre-emption due to The McNamara-O'Hara Service Contract Act

("SCA").  In addition to the foregoing, there are questions of joint employer status with

SeniorCare and AMR.  The Second Circuit has held that determining joint employer status

involves a fact-specific inquiry, requiring courts to look at the totality of the circumstances "in

light of economic reality." _Zheng v. Liberty Apparel Co. Inc._, 355 F.3d 61, 71 (2d Cir. 2006)

(internal quotation marks omitted).  Were this litigation to continue it would be complex

(involving motions for class and conditional certification and questions of joint employer

status), costly (given substantial motion practice and discovery) and long (given substantial

motion practice, discovery, and a potential trial involving potentially greater than 24 witnesses).

This settlement, on the other hand, provides significant relief to impacted Plaintiffs/class

members/collective members in a prompt and efficient manner. Therefore, the first _Grinnell_

factor weighs in favor of final approval.

2.      **The Class's Reaction Has Been Largely Positive (_Grinnell_ Factor
        2).**

Of the 24 potential Class Members, 14 people have opted in (2 named Plaintiffs and an

additional 12 individuals), there have been _no opt outs and no objections_.  The fact that the

Class reacted overwhelmingly positively to the settlement weighs in favor of approval.  _See_

_Flores v. Mamma Lombardi's of Holbrook, Inc_., 104 F. Supp. 3d 290, 302 (E.D.N.Y. 2015)

("[T]he fact that the vast majority of class members neither objected nor opted out is a strong

indication that the proposed settlement is fair, reasonable and adequate.").

**<u>3.</u>**     **<u>Discovery Has Advanced Far Enough to Allow the Parties to Resolve this Case Responsibly (*Grinnell* Factor 3).</u>**

Although preparing this case through trial would require many more hours of discovery for both sides, the parties have enough information to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement but an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000)(internal quotation marks, brackets, and ellipses omitted).  The parties' discovery here meets this standard. Initially, Plaintiffs' counsel had numerous discussions with the named Plaintiffs and conducted a damages analysis on both an individual and class wide basis.  Further, the parties exchanged pertinent discovery.  Moreover, the parties held a mediation session with Robert J. Kheel, Esq. on December 15, 2020 in which the parties were able to do substantial work with respect to reaching a settlement including the continued exchange of information.  Thereafter, the parties continued to negotiate and exchange information until a settlement was ultimately reached. Under such circumstances, discovery has advanced far enough to allow the parties to resolve this case responsibly.  *See Sewell v. Bovis Lend Lease, Inc*., No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012) (granting final approval where the parties exchanged documents and plaintiffs' counsel interviewed class members).

**<u>4.</u>**     **<u>Plaintiff and the Class Members Would Face Risk If the Case Proceeded (*Grinnell* Factors 4 and 5).</u>**

Although Plaintiffs believe their case is strong, it is subject to risk.  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969).  In weighing the

risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Holocaust Litig.*, 80 F. Supp. 2d at 177 (internal quotation marks omitted).  As set forth above, the instant litigation concerns issues of state and federal law, pre-emption, joint employer status, and several classes and collectives.  Each item comes with its own potential risks.  Notwithstanding same, the members of the class/collective (issues of meal stipends aside) will be receiving the full amount they are entitled to under the FLSA for their unpaid overtime claims.  The proposed settlement alleviates any uncertainty and more than fairly compensates the class/collective members.  This factor therefore weighs in favor of approval.

    **5.**  **Establishing and Maintaining the Class Through Trial Presents Risk (*Grinnell* Factor 6).**

   The risk of obtaining class and collective certification and maintaining same through trial is present.  Prior to the settlement there was neither a motion for preliminary collective certification nor a motion for class certification.  To proceed on behalf of a class and collective, Plaintiffs would have had to prevail on the aforesaid motions and substantial additional discovery and briefing would have been necessary.  *See Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *11 (S.D.N.Y. Sept. 16, 2011) (explaining risk of establishing a class and maintaining it through trial, and finding such risk supported final approval). Settlement eliminates these risks, expenses, and delays. This factor favors approval.

    **6.**  **The Settlement Fund Is Substantial, Particularly in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**.

   The settlement amount represents substantial value given the risks of litigation.  The determination of whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Holocaust Litig.*, 80 F. Supp. 2d at

178 (quoting *Michael Milken and Assoc. Sec. Lit.*, 150 F.R.D. 57, 66 (S.D.N.Y. 1993)); *see also*

*Ballinger v. Advance Mag. Publishers, Inc.*, No. 13 Civ. 4036, 2014 WL 7495092, at *3

(S.D.N.Y. Dec. 29, 2014) ("The inquiry with respect to this factor is to 'see whether the

settlement falls below the lowest point in the range of reasonableness.'") (quoting *In re Gache,*

164 F.3d 617, 1998 WL 646756 at *1 (2d Cir. 1998)). "Instead, 'there is a range of

reasonableness with respect to a settlement – a range which recognizes the uncertainties of law

and fact in any particular case and the concomitant risks and costs necessarily inherent in taking

any litigation to completion.'" *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y.

2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at

least in theory, why a satisfactory settlement could not amount to a hundredth or even a

thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2.

Here, the settlement provides a substantial percentage of the potential recovery. By Class

Counsel's estimation, the $125,000 apportioned to the class/collective's overtime claims

represents all of the unpaid overtime and liquidated damages (meal stipend issues aside) that the

class/collective members would be entitled to under the FLSA.  After accounting for Settlement

Claims Administrator Fees, anticipated counsel fees and costs and anticipated service awards the

average per-person settlement award for the 14 Class Members is approximately $5,300 and the

highest is nearly $9,400.  Pagano Dec, Exhibit 5.  Weighing the benefits of the settlement

against the available evidence and the risks associated with proceeding in the litigation, the

settlement amount is reasonable.

## II.    APPROVAL OF THE FLSA SETTLEMENT IS APPROPRIATE UNDER FEDERAL LAW

Plaintiffs also request that the Court approve the settlement of the FLSA claims.  Unlike

the procedure under Rule 23, collective members must affirmatively opt in to the litigation in

order to join it. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 84 (S.D.N.Y.

2001). Because, under the FLSA, a failure to opt in "does not prevent [individuals] from bringing

their own suits at a later date[,]" FLSA collective actions do not implicate the same due process

concerns as Rule 23 actions. *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir.

1984), *abrogated on other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165

(1989). "Accordingly, an FLSA settlement is examined with less scrutiny than a class action

settlement; the court simply asks whether the settlement reflects a fair and reasonable

compromise of disputed issues that was reached as a result of contested litigation." *Lizondro-*

*Garcia v. Kefi LLC*, No. 12 Civ. 1906, 2014 WL 4996248, at *6 (S.D.N.Y. Oct. 7, 2014).

Because the Agreement resolves a *bona fide* dispute, was reached after vigorous arm's-length

negotiations, and provides the collective members with essentially all of their potential damages

under the FLSA it should be approved. *See id*.

## III. PLAINTIFFS CONNORS AND RUBIO SHOULD BE GIVEN SERVICE AWARDS

As set forth above, Plaintiffs Connors and Rubio were integral to the settlement of this

matter as they were instrumental in drafting the complaint, preparing discovery demands and

responding to same, participating in mediation, and obtaining a favorable result for the Class

Members.  They have also shouldered the inherent risks of being named Plaintiffs in a class

action lawsuit.  Service Awards of the type requested are commonly awarded in complex wage

and hour litigation. *See Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, No. 04 Civ. 2295,

2009 U.S. Dist. LEXIS 77489, at *10 (S.D.N.Y. 2009) ("Such service awards are common in

class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff.").  The $2,000 requested by each of Plaintiff Connors and Rubio is modest and deserved in light of the benefits they have been able to bring the Class Members.  *See e.g. Pearlman v. Cablevision Sys. Corp.*, No. CV 10-4992 (JS) (AKT), 2019 U.S. Dist. LEXIS 142222, at *27 (E.D.N.Y. Aug. 20, 2019)(awarding $1,500 service awards to each of 16 class representatives).  Defendants do not contest the service awards.

## IV. PLAINTIFFS' COUNSEL'S REQUEST FOR ATTORNEYS' FEES SHOULD BE APPROVED

As set forth above, the total settlement is for $160,000.  $35,000 of that is apportioned to Plaintiff Connors and Plaintiff Rubio's individual claims including their Frequency claims. From the $35,000, Plaintiffs' counsel seeks a standard contingency award of 1/3 or $11,666.67. The balance of the total settlement, $125,000, is apportioned to the Class Members' claims. From the foregoing, Plaintiffs' counsel seeks a standard contingency award of 1/3 or $41,666.66.  As an initial matter, as here, where Plaintiffs' counsel is requesting a percentage of the fund award, it is common to see 33% contingency fees in cases with funds of less than 10 million dollars.  *Pearlman v. Cablevision Sys. Corp.*, No. CV 10-4992 (JS) (AKT), 2019 U.S. Dist. LEXIS 142222, at *12-13 (E.D.N.Y. Aug. 20, 2019).

Further, in determining the appropriateness of an attorney fee award courts look at the factors enumerated in *Goldberger v. Integrated Res.*, 209 F.3d 43, 50 (2d Cir. 2000), specifically: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  As to the first factor, through

August 4, 2021, Plaintiffs' counsel has expended approximately 116 hours on the matter totaling

nearly $46,000 with Paul Pagano, Esq. a partner at Moser Law Firm, P.C. with almost 12 years

of experience billing out at $375/per hour and Steven J. Moser, Esq. the named partner at Moser

Law Firm, P.C. billing out at $450/per hour prior to 2021 and $500/per hour during 2021[3].  The

nearly $46,000 (which does not include finalizing and filing the instant motion papers or any

post-approval work) is more than the $41,666.66 sought from the $125,000 apportioned to the

Class Members' claims and approximately $5,000 less than the total attorneys' fees sought.[4]

The first factor weights in favor of the attorneys' fees requested.

Given the state and federal claims at issue, the issue of possible federal pre-emption, the

issue of joint employer status, and the challenges of simultaneously litigating a class and

collective action it is fair to say that the case was of a substantial magnitude and complexity and

that the second element is met.

As to the third factor, the risk of litigation, Plaintiffs' counsel has prosecuted this case on

a contingency fee basis against established companies.  Had Plaintiffs lost the case, Plaintiffs'

counsel would not have recovered anything.  Under such circumstances, the fees requested are

well within reason.

As to the fourth factor, quality of representation, Plaintiffs counsel respectfully submits

that they have provided excellent representation in this matter by recovering (meal stipend

issues aside) the full alleged unpaid overtime wages and liquidated damages the Class Members

are entitled to under the FLSA and that Plaintiffs' counsel's positive performance is further

---

[3] *See* Pagano Dec., Exhibit 4.

[4] Thus, the multiplier sought here is a mere .16 which is well within a reasonable range.  I*n re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008)("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court.")

evidenced by the fact that there have been no opt outs or objections to the settlement.  *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 593 (S.D.N.Y. 2008)(overwhelmingly positive reaction of the Class to the settlement demonstrated that Plaintiffs' counsel generated an excellent result).

As to the fifth factor, requested fee in relation to the settlement, as set forth above, the requested fee represents a third of the total settlement, a percentage which is routinely awarded in percentage of fund settlements.  *Pearlman v. Cablevision Sys. Corp.*, No. CV 10-4992 (JS) (AKT), 2019 U.S. Dist. LEXIS 142222, at *12-13 (E.D.N.Y. Aug. 20, 2019).

As to the last factor, public policy considerations, same are in favor of approving the fee award.  Initially, the amount requested is very close to the lodestar figure and as such there is no windfall to Plaintiffs' counsel.  Moreover, incentivizing competent counsel to take on large cases on a contingent basis furthers an important public policy.  *Burns v. Falconstor Software, Inc.*, No. 10 CV 4632 (ERK), 2014 U.S. Dist. LEXIS 203061, at *27 (E.D.N.Y. Apr. 10, 2014)

For all of the foregoing reasons, Plaintiffs' counsel's request for $53,333.33 should be granted.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court issue an Order: (1) certifying the following settlement class under Fed R. Civ. P. 23(a), b(1) and b(3): all individuals who performed work as Emergency Medical Technicians or Paramedics in connection with a deployment in New York in response to the COVID-19 pandemic during the period beginning March 29, 2020 and continuing through May 30, 2020; (2) approving the settlement and Settlement Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely filed an opt-out statement: (3) ordering Defendant to fund the

Qualified Settlement Fund within 15 days of the Final Approval Order; (4) ordering the Settlement Claims Administrator to distribute Settlement Checks to the named Plaintiffs from the Qualified Settlement Fund for the individual Plaintiffs' Frequency Claims within 30 days of the Final Approval Order; (5) approving the Service Awards to be paid to the Class Representatives and ordering the Settlement Claims Administrator to pay same from the Qualified Settlement Fund within 30 days of the Final Approval Order; (6) approving Plaintiffs' counsel's request for attorneys' fees and costs and ordering the Settlement Claims Administrator to pay from the Qualified Settlement Fund the attorneys' fees and costs to be paid to Class Counsel within 30 days of the Final Approval Order; (7) approving the $5,000 payment to the Settlement Claims Administrator and authorizing same to pay itself from the Qualified Settlement Fund within 30 days of the Final Approval Order; (8) ordering the Settlement Claims Administrator to distribute Settlement Checks to the named Plaintiffs and Authorized Claimants from the Net Settlement Fund for the class claims within 30 days of the Final Approval Order; (9) ordering the dismissal with prejudice of all claims asserted in the Lawsuit by the named Plaintiffs and the unpaid overtime and notice claims of all Class Members who did not timely file an opt-out statement; (10) retaining jurisdiction over the litigation as necessary for the purpose of filing consent-to-join forms from the Authorized Claimants as set forth in their Settlement Checks and other relief; (11) ordering that the Settlement Claims Administrator: (i) provide verification to Class Counsel and Defendants' counsel that it has distributed the settlement checks to authorized claimants; (ii) retain copies of all the endorsed settlement checks with releases; and (iii) provide Defendants' Counsel with copies of the endorsed Settlement Checks; and (12) granting such other, further, or different relief as the Court deems just and proper.

Dated:  Huntington, New York
        August 6, 2021

                                    Respectfully submitted,
                                    Moser Law Firm, P.C.

                                    *Paul Pagano*
                                    _____
                                    Paul A. Pagano
                                    5 East Main Street
                                    Huntington, NY 11743
                                    paul.pagano@moserlawfirm.com
                                    Tel: (516) 671-1150

19